UNITED STATES of America, Appellee,

v.

**Russell SINGLETARY, Appellant.**

No. 77–1294.

United States Court of Appeals,
Eighth Circuit.

Submitted Aug. 23, 1977.

Decided Aug. 29, 1977.

was allowed to repurchase 10,000 at the redemption price from Merrill Lynch.

Gary P. Thimsen, Woods, Fuller, Shultz & Smith, Sioux Falls, S. D., for appellant.

David V. Vrooman, U. S. Atty. and Robert D. Hiaring, Asst. U. S. Atty., Sioux Falls, S. D., for appellee.

Before HEANEY, ROSS and WEBSTER, Circuit Judges.

PER CURIAM.

Russell Singletary appeals from his conviction by jury verdict, on one count of conspiracy to forge and utter United States Treasury checks, in violation of 18 U.S.C. § 371, and eleven counts of aiding and abetting the uttering of forged United States Treasury checks, in violation of 18 U.S.C. § 495. We affirm.

Singletary contends that the trial court erred by giving appellant only four days to give notice of an alibi defense, refusing to receive in evidence results of handwriting and fingerprint analysis, and delivering a supplemental instruction, an alternative to the "Allen" charge to the deadlocked jury.

*Notice of Alibi Defense*

Singletary was served a government demand for notice of alibi defense, pursuant to Fed. R. Crim. P. 12.1(a), at his arraignment on January 13, 1977. On the same day, the court granted the government's motion to shorten the time for Singletary to give notice of an alibi defense to January 17, 1977, the trial date. Thus, the usual 10 days provided for in Fed. R. Crim. P. 12.1(a) was shortened to four days, two of which were Saturday and Sunday.[1] Both Singletary and his attorney objected, and the court qualified its ruling by stating that it would give consideration to admitting alibi evidence discovered after January 17, 1977.

On the morning of January 19, 1977, after both sides had rested and instructions had been settled upon, the defense moved to reopen and call alibi witnesses. The court recessed to allow the defense to see what witnesses were available, with the condition that the testimony be completed that day. A continuance was denied. That

---

1. Fed. R. Crim. P. 12.1 reads in part as follows:

(a) *Notice by Defendant.* Upon written demand of the attorney for the government stating the time, date, and place at which the alleged offense was committed, the defendant shall serve within ten days, *or at such different time as the court may direct*, upon the attorney for the government a written notice of his intention to offer a defense of alibi. Such notice by the defendant shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom he intends to rely to establish such alibi.

(b) *Disclosure of Information and Witness.* Within ten days thereafter, but in no event less than ten days before trial, *unless the court otherwise directs*, the attorney for the government shall serve upon the defendant or his attorney a written notice stating the names and addresses of the witnesses upon whom the government intends to rely to establish the defendant's presence at the scene of the alleged offense and any other witnesses to be relied on to rebut testimony of any of the defendant's alibi witnesses. (Emphasis supplied.)

afternoon, the defense called three alibi witnesses.

Singletary argues that the order giving him four days to give notice of an alibi defense deprived him of a valuable defense, because he was unable to investigate and prepare, and denied him his right to reciprocal discovery of the government's witnesses.

Federal Rule of Criminal Procedure 12.-1(a) clearly allows the trial court to order a different time period for the defendant to give notice. This is consistent with the trial court's traditional discretion in discovery matters. *See United States v. Crow Dog*, 532 F.2d 1182, 1189 (8th Cir. 1976), *cert. denied*, 430 U.S. 929, 97 S.Ct. 1547, 51 L.Ed.2d 772 (1977); *United States v. Swanson*, 509 F.2d 1205, 1209 (8th Cir. 1975).

■ Under the circumstances of this case, the order was not an abuse of discretion. Singletary was not denied a valuable defense. The trial court allowed presentation of the alibi defense, and Singletary does not give any indication that he had other witnesses to call or evidence to present. Even if the order prevented reciprocal discovery of rebuttal witnesses ten days prior to trial, Fed. R. Crim. P. 12.1(b); *Wardius v. Oregon*, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973), no prejudice to the defense resulted. The government did not call any rebuttal witnesses, and the one government witness who placed Singletary at the place in question on the date in question was interviewed by the defense prior to trial.

*Supplemental Instruction to Deadlocked Jury*

■ The jury retired at 5:25 p.m. on January 19, 1977. They were excused that night after approximately six hours of deliberation. The following morning, after 35 minutes of deliberation, instructions on conspiracy, circumstantial evidence, credibility, and reasonable doubt were read at the jury's request. At 2:50 p.m., having received a note from the foreman stating that the jury was unable to come to an unanimous decision, the judge recalled the jury. He read a brief instruction given in the original charge, an alternative to the "Allen" charge, and directed the jury to resume deliberations.[2] The jury returned a verdict of guilty on all counts at 4:30 p.m., an hour and a half later.

Pointing out the length of deliberation prior to and after the reading of the supplemental instruction, Singletary contends that the verdict was coerced. We disagree.

The substance of the charge is far milder than that of the Allen charge, approved by this court when circumstances indicate that it has not had a coercive effect. *United States v. Wiebold*, 507 F.2d 932, 934 (8th Cir. 1974); *United States v. Ringland*, 497 F.2d 1250, 1252–53 (8th Cir. 1974). Unlike the Allen charge, it does not ask the minority to reexamine its position, mention the cost of trial or retrial, or state that the case must someday be decided. The instruction is virtually identical to one recommended for delivery both in the original charge and after deadlock in ABA Standards Relating to Trial by Jury § 5.4 (Approved Draft, 1968). This court has approved similar instructions in *United States v. Skillman*, 442 F.2d 542, 558–59 n. 13 (8th Cir.), *cert. denied*, 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971), and *United States v. Chrysler*, 533 F.2d 1055, 1056–57 (8th Cir.), *cert. denied*, 429 U.S. 844, 97 S.Ct. 124, 50 L.Ed.2d 115 (1976).

2. The instruction reads as follows:

Now, it is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, individually, but do so only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views, and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.

Nor do the circumstances in which this instruction was delivered show a coercive effect on the jury. The jury deliberated for approximately ten hours before the supplemental instruction was read, and an hour and a half thereafter. We cannot say that this comparison alone indicates coercion. *Cf. United States v. Chrysler, supra,* 533 F.2d 1055 (deliberation six hours before, 20 minutes after reading); *United States v. Ringland, supra,* 497 F.2d 1250 (deliberation four and a half hours before, 30 minutes after reading). Although the instruction was given twice, both in the original charge and after deadlock, that would not necessarily add coercive effect; use of the same instruction could conceivably make the jury less apt to construe it as an expression by the judge of dissatisfaction with their position than if a new instruction were given.

*Exclusion of Handwriting and Fingerprint Test Results*

■ Contrary to Singletary's contention, evidence of handwriting and fingerprint test results or reports was not refused—it was never offered. While the trial court did sustain, as beyond the scope of the direct, an objection to defense counsel's question as to the results of the tests, it allowed the witness to be called and examined in the defendant's case. The defense called the witness, but did not elicit any information on handwriting or fingerprint test reports or offer the reports in evidence. Clearly, no error was committed by the trial court in this regard.

The judgment is affirmed.