**UNITED STATES of America, Appellee,**

v.

**Diane Lynn CORDOVA, Appellant.**

No. 92–2137.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 13, 1992.

Decided April 8, 1993.

Virginia G. Villa, Federal Public Defender, Minneapolis, MN, argued (Andrea K. George, Asst. Federal Public Defender, and Michael Hutchens, Legal Intern, on the brief), for appellant.

Paul Anthony Murphy, Asst. U.S. Atty., Minneapolis, MN, argued, for appellee.

Before McMILLIAN, MAGILL and HANSEN, Circuit Judges.

HANSEN, Circuit Judge.

Diane Lynn Cordova entered a conditional guilty plea to one count of possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Pursuant to the plea agreement, Cordova reserved the right to appeal the district court's [1] denial of her pretrial motion to suppress. We affirm.

### I.

In September 1991, Joseph Cordova (Joseph), husband of defendant Diane Cordova (Cordova), was working as an informant for the Minneapolis police department. On September 11, 1991, Joseph gave the police details about a large shipment of heroin that would be coming from California. Two days later Joseph notified them that the vehicle containing the heroin had arrived. Based on this information, Minneapolis police officers stopped a car fitting the description Joseph had provided and driven by the two individuals Joseph had identified. The police arrested the occupants, Lucio and Maribel Gamez, and found heroin and a significant amount of cash in Maribel's purse as well as additional narcotics in the trunk of their car.

Upon his arrest, Lucio Gamez agreed to cooperate with the police. He told the officers that "Joe" had bought approximately 23 grams of heroin from him. Lucio also had a telephone book in which he had written "Joe's" name and a corresponding telephone number, a number the police recognized as belonging to Joseph Cordova. The officers then obtained a search warrant for the Cordova residence as well as for the persons of Joseph Cordova, Diane Cordova, and two unknown Mexican males who turned out to be Ramon Gazcon and Francisco Barajas. Cordova does not challenge the validity of this warrant.

Two uniformed officers, who made the initial entry, and five plain-clothed officers executed the search warrant on September 14, 1991. Officers Donna Olson and Timothy Savior, two of the plain-clothed offi-cers, testified at the suppression hearing. Officer Savior, who approached the home from the rear southwest corner, testified that as he heard the uniformed officers announce their presence at the front door he saw Ramon Gazcon attempt to jump through a bedroom window. Officer Savior prevented the escape by ordering Gazcon back inside at gunpoint. Officer Olson, who was positioned toward the front of the house, followed the uniformed officers inside the house, with her gun drawn, to search and inventory.

After the other officers secured Gazcon and Barajas, Officer Savior proceeded to the front of the house where he motioned Joseph Cordova to come outside. At that point Officer Savior told Joseph that the police were looking for heroin. When Joseph denied having any drugs, Officer Savior placed him under arrest and read him his *Miranda* rights. After telling Officer Savior he was willing to talk, Joseph admitted to having a "personal stash" of heroin hidden in his bedroom. The officers found the heroin in the bedroom ceiling in the location Joseph described.

After the heroin was retrieved from the bedroom, Officer Savior noticed Diane Cordova sitting in the living room. Officer Savior approached her and told her that her husband had just been arrested. He also asked her if Joseph had any additional heroin anywhere in the house. According to Officer Savior, Diane Cordova responded to his inquiry by indicating that she wanted to talk with him. Cordova then led Officer Savior outside to a pile of tires stored between the houses which was where, she said, Joseph normally kept his drugs. The two of them searched the tires together, but they found nothing. At that point, Diane Cordova whispered to Officer Savior that the drugs were inside of her. When Officer Savior asked her to explain, Cordova indicated that the drugs were in her vagina.

---

**1.** The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

Upon Officer Savior's request, Officer Olson accompanied Cordova to the bathroom, where Cordova removed the drugs. Cordova was immediately placed under arrest and taken to the police station. Neither officer asked Cordova any more questions at that time.

Cordova was indicted on one count of conspiracy to possess with intent to distribute approximately 357 grams of heroin and approximately 1000 grams of cocaine in violation of 21 U.S.C. § 846 and § 841(a)(1) (Count I) and one count of possession with intent to distribute approximately 30.02 grams of a mixture and substance containing heroin in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count II). Cordova was indicted with her husband Joseph Cordova, Lucio and Maribel Gamez, Ramon Gazcon, Francisco Barajas, and Antonio Ramirez.

Cordova moved to suppress both the statements she made to Officer Savior and the heroin that was found in her body. The district court, adopting the recommendations of the magistrate judge [2] who held an evidentiary hearing and issued a report on the motion, denied it, and Cordova entered a conditional plea of guilty to Count II of the indictment, reserving the right to appeal the denial of her motion to suppress. Upon a motion from the government, the district court dismissed the charges contained in Count I.

## II.

The district court found that Diane Cordova was not in custody when she spoke with Officer Savior and, therefore, *Miranda* warnings were not necessary. Because we conclude that Cordova's statements to Officer Savior were not the result of any interrogation but were in fact voluntary revelations by her, we do not address the issue of whether or not she was in custody at the time of her encounter with Officer Savior.

■ We review the district court's denial of a motion to suppress under the clearly erroneous standard. *United States v.*

*Keene,* 915 F.2d 1164, 1167 (8th Cir.1990) (citations omitted), *cert. denied,* 498 U.S. 1102, 111 S.Ct. 1001, 112 L.Ed.2d 1084 (1991). "[W]e must affirm the decision of the district court unless it is not supported by substantial record evidence, it reflects an erroneous view of the applicable law, or upon review of the entire record, we are left with a definite and firm conviction that a mistake has been made." *United States v. Eisenberg,* 807 F.2d 1446, 1450 (8th Cir. 1986) (citations omitted).

■ The reading of *Miranda* rights is required "whenever a suspect is (1) interrogated (2) while in custody." *United States v. Griffin,* 922 F.2d 1343, 1347 (8th Cir. 1990) (footnote omitted). Prior to interrogation, police officers must inform those individuals who have been placed under arrest or whose freedom of action has been restricted in a significant way of their rights against self-incrimination. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Cordova argues that the statements she made to Officer Savior were the product of a custodial interrogation. Because Officer Savior did not read the *Miranda* warnings prior to speaking with her at her residence on September 14, 1991, Cordova asserts that evidence of the statements she made to him, as well as of the heroin found in her body, should be suppressed.

## III.

■ "[E]ither express questioning or its functional equivalent" may constitute "interrogation." *Rhode Island v. Innis,* 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980). Cordova's statements to Officer Savior, however, were not "the product of words or actions on the part of the police that they should have known were reasonably likely to elicit an incriminating response." *Id.* at 300–01, 100 S.Ct. at 1689. Officer Savior initially asked Cordova whether her husband Joseph had any more drugs stored in the house. Officer Savior did not ask Cordova whether she owned either the drugs already found or

the additional drugs for which they were looking; nor did he ask about her association with the drugs. Furthermore, the evidence indicates Cordova understood that the focus of the inquiry was Joseph. She knew that Joseph had been arrested on drug charges, and she responded to Officer Savior's initial inquiry by leading him to the location where she knew Joseph hid his drugs.

Cordova argues that her statements were a response that flowed directly from the initial question posed in the living room by Officer Savior. We disagree and find no causal link. Cordova voluntarily offered information to Officer Savior about the drugs inside her body without any prompting from the officer himself. We find no indication that when the search of the tires proved fruitless Officer Savior insisted that Cordova tell him other places the drugs might be. Rather, Cordova, on her own initiative, whispered that the drugs were inside of her. Officer Savior's only follow-up question was designed to clarify what she meant. When he understood where the drugs were, he did not question her any further. Instead, he sent Cordova and Officer Olson directly to the bathroom to retrieve the drugs. Furthermore, Officer Savior's initial contact with Cordova did not amount to coercive questioning. Cordova, who was free to refuse to respond, told Officer Savior that she wanted to speak with him. Cordova also had the option of responding only to the question asked of her. She was under no obligation to volunteer information, several minutes after the initial contact with Officer Savior, about her own involvement with the heroin for which the officers were searching.

"*Miranda* has no application to statements ... that are voluntarily offered and are not a product of either express questioning or any police practice reasonably likely to evoke an incriminating response." *Griffin*, 922 F.2d at 1357 (citing *United States v. McGauley*, 786 F.2d 888, 891 (8th Cir.1986); *United States v. Webster*, 769 F.2d 487, 492 (8th Cir.1985)). Cordova's statement that the drugs were in fact inside of her body was not done in response to any questioning by Officer Savior. As a result, Officer Savior was under no obligation to read her the *Miranda* warnings.

## IV.

The district court properly denied Cordova's motion to suppress the statements made to Officer Savior and the heroin found in her body. We affirm the judgment of the district court.