_____

No. 95-2729
_____

United States of America,          *
                                   *
        Plaintiff-Appellee,        *  Appeal from the United States
                                   *  District Court for the
    v.                             *  District of Minnesota.
                                   *
Steven Miles Oehlenschlager,       *
true name Steven Miles             *
Oehlenschlager, Jr.,               *
                                   *
        Defendant-Appellant.       *


_____

            Submitted:  November 17, 1995

               Filed:  February 13, 1996
_____

Before HANSEN, LAY, and MURPHY, Circuit Judges.
_____


HANSEN, Circuit Judge.

        Steven Miles Oehlenschlager, Jr., appeals the sentence imposed
upon him by the district court[1] after he pleaded guilty to
illegally importing wildlife in foreign commerce and aiding and
abetting the illegal importation of wildlife.  See 16 U.S.C.
§§ 3372(a)(2)(A), 3373(d)(1)(A).  Specifically, Oehlenschlager
challenges a five-level upward adjustment to his base offense level
imposed on the basis of the market value of the wildlife, arguing
that the district court unreasonably estimated the market value
without holding an evidentiary hearing.  We affirm.

_____

        [1]The Honorable James M. Rosenbaum, United States District
Judge for the District of Minnesota.

Oehlenschlager was indicted for illegally taking, importing, and selling wildlife consisting of migratory waterfowl eggs and birds; he pleaded guilty to two counts of the indictment. In the plea agreement, Oehlenschlager admitted to the following: (1) In July 1992, he knowingly traveled to Canada and unlawfully took from the wild approximately 36 white-winged scoter eggs and a lesser number of scaup eggs and knowingly imported them into the United States; (2) In June 1993, he knowingly traveled to Canada and unlawfully took from the wild approximately 13 redbreasted merganser eggs and 50 common merganser eggs and knowingly imported them into the United States.

For these offenses, the Sentencing Guidelines provide a base offense level of six, which must be adjusted upward for specific offense characteristics. See United States Sentencing Commission, Guidelines Manual, § 2Q2.1 (Nov. 1994). Oehlenschlager agreed that a two-level upward adjustment was appropriate because the offenses were "committed for pecuniary gain or otherwise involved a commercial purpose," a specific offense characteristic. U.S.S.G. § 2Q2.1(b)(1)(A). Section 2Q2.1 also provides for an upward adjustment based upon the market value of the wildlife at issue when that value exceeds $2,000. U.S.S.G. § 2Q2.1(b)(3)(A).

The Presentence Investigation Report (PSIR) valued the wildlife at approximately $54,100. Oehlenschlager objected because this valuation equated the value of the eggs with the value of the live birds which would be hatched from the eggs, a valuation method which he contended was unreasonable. Oehlenschlager argued that the eggs have little or no value themselves and have a high mortality rate in the wild so every egg would not necessarily hatch into a live bird. The district court, after considering the parties' briefs and hearing extensive argument on the subject, overruled this objection, adopted the PSIR's estimated market value of $54,100, and added a five-level increase to Oehlenschlager's

2

offense level according to the table provided in the Guidelines. See U.S.S.G. § 2F1.1(b).

Oehlenschlager appeals, arguing that the district court erred in adopting the valuation of the wildlife set forth in the PSIR without holding an evidentiary hearing upon learning that he contested the value of the eggs. "Correct application of the Sentencing Guidelines is a question of law subject to de novo review by this Court." United States v. LaMere, 980 F.2d 506, 510 (8th Cir. 1992). The district court's factual determinations, however, are subject to review for clear error. Id.

Sentencing Guideline § 2Q2.1(b)(3)(A) provides in relevant part:

> If the market value of the . . . wildlife . . . exceeded $2,000, increase the offense level by the corresponding number of levels from the table in § 2F1.1 (Fraud and Deceit)[.]

The table in § 2F1.1 dictates a five-level upward adjustment when the value of the wildlife is more than $40,000 but not more than $70,000. U.S.S.G. § 2F1.1(b)(F).

To determine the "market value" of the wildlife under § 2Q2.1(b)(3)(A), the Guideline commentary provides that "[w]hen information is reasonably available, `market value' under subsection (b)(3)(A) shall be based on the fair-market retail price," and where this "is difficult to ascertain, the court may make a reasonable estimate using any reliable information." U.S.S.G. § 2Q2.1, comment. (n.4). The commentary to the fraud and deceit table (which is used to calculate the level of upward adjustment based upon the market value of the wildlife), instructs that "loss" for purposes of the table "need not be determined with precision;" the court need only make a reasonable estimate given the available information, including the offender's gain from

3

committing the crime or the amount of loss intended by the crime. U.S.S.G. § 2F1.1(b)(1), comment. (nn.7, 8).[2]

The fair-market retail value of the waterfowl eggs, a question of fact, "is difficult to ascertain" in this case. U.S.S.G. § 2Q2.1, comment. (n.4). A market value for the eggs is not readily available because, although Oehlenschlager sometimes traded eggs for eggs, there is no evidence that he sold the eggs and there is no known price list for the eggs. Because no market value is reasonably ascertainable for the eggs, the Sentencing Guidelines required the district court to make a reasonable estimate of market value based upon reliable facts.

Oehlenschlager contends that the underlying facts on which the district court based its estimate of market value were not reliable but were disputed, and therefore, the district court erred by not holding an evidentiary hearing. When a defendant objects to the factual allegations in a PSIR, the district court must either state that it will not take into account the disputed facts or must hold an evidentiary hearing and make findings on the disputed issue. United States v. Streeter, 907 F.2d 781, 792 (8th Cir. 1990). We have repeatedly held that a PSIR "is not evidence," and when material issues of fact are disputed, the PSIR is not a valid basis on which the district court can make factual determinations. Id. at 791-92, quoted in United States v. Hammer, 3 F.3d 266, 272 (8th Cir. 1993). On the other hand, when a defendant has admitted the facts alleged in the PSIR, the district court is entitled to rely on them. Hammer, 3 F.3d at 272.

_____

[2]"[I]t is [proper] for a district court, when instructed by the Guidelines to refer to a particular subsection in making its sentencing determination, to look to the underlying commentary for guidance in interpreting a word or phrase that appears in the specific subsection to which the court was referred." LaMere, 980 F.2d at 512.

4

Contrary to Oehlenschlager's contention, the market value calculation of $54,100, estimated in the PSIR and adopted by the district court, was not derived from unreliable or disputed facts but was estimated from Oehlenschlager's own undisputed price list for live birds. Oehlenschlager did not contend that his price list for live birds of the same species, containing the underlying facts on which the district court relied, was inaccurate. Rather, he contended that the method of estimating the market value for the eggs -- equating it with the market value for the live birds -- was unreasonable. He argued for a theory which would discount the market value to some degree to account for the risk of mortality of the eggs. This is not a factual dispute but a legal argument on the most reasonable theory by which to estimate market value when market value is not readily ascertainable.

The district court read briefs, heard argument on, and ultimately rejected Oehlenschlager's assertions regarding the mortality rate of eggs in the wild,[3] concluding that the argument, proffered to diminish the value of the eggs, was "disingenuous in the extreme." Oehlenschlager, 895 F. Supp. at 246. The court noted, "The argument is unpleasantly like that of the child who kills her parents and seeks mercy because she is an orphan." Id. The district court relied instead on the price list for live birds written indisputably by Oehlenschlager's own hand and found this to be a reliable basis on which to estimate the value of the eggs.

We agree with the district court's assessment that it is fair and reasonable to base the value of the eggs, for which there is no reasonably available market price, on the value that Oehlenschlager himself placed on the live birds. As the district court noted, this "is the sum by which the defendant stood to profit in the

---

[3]In his sentencing position paper, Oehlenschlager asserted that white winged scoters had a 71% nest hatch rate in the wild and that goldeneyes suffered even greater mortality losses in the wild.

5

event his criminal enterprise succeeded." United States v. Oehlenschlager, 895 F. Supp. 245, 247 (D. Minn. 1995). His price list reveals the market value that he intended eventually to realize from the eggs. Oehlenschlager's entire criminal enterprise was dependent on illegally importing the waterfowl eggs and either hatching them under controlled conditions in his incubator, raising the birds in his brooder house, and then selling the birds at the prices he listed; or trading the eggs for other eggs to hatch and sell. Without first illegally importing the eggs, Oehlenschlager could not have profited from the sale of the birds as he intended. Furthermore, the district court stated that even discounting the value by 20% to compensate for a risk of unfertilized or "dump nest" eggs (which are eggs from a nest that has been deserted), the value remains in excess of $40,000 and thus warrants the same five-level increase, according to the table in U.S.S.G. § 2F1.1(b)(1)(F). Therefore, we conclude that it was reasonable to estimate the market value of the eggs as equivalent to the uncontested market value of the live birds, which is the gross amount that Oehlenschlager intended to realize from his illegal activity.

The district court did not err by failing to hold an evidentiary hearing since the court was able to make a reasonable estimate of the market value of the eggs based on the undisputed fact of the market value for the birds. See United States v. Clark, 986 F.2d 65, 70 (4th Cir. 1993) (holding magistrate judge did not err by relying on defendant's own conversation to determine the market value of a tiger skin rug). We agree with Oehlenschlager that the defendant does not have the burden of proof with regard to enhancements. See Hammer, 3 F.3d at 272 (stating that the government has the burden of proof for the base offense level and enhancing factors). Nevertheless, in cases where the district court is able to make a reasonable estimate of value based upon facts that are not in dispute, we will not permit the defendant to sandbag the district court by contesting valuation

6

without submitting a request for an evidentiary hearing, as required by local rule.  <u>See</u> Minnesota Local Rule 83.10(f).

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.