_____

No. 96-1786
_____

United States of America,     *
                               *
    Plaintiff-Appellee,    *
                               *  Appeal from the United States
    v.                    *  District Court for the
                               *  Eastern District of Arkansas.
Keith Hawkins,         *
                               *
    Defendant-Appellant.   *

_____

Submitted:  October 23, 1996

Filed:  December 24, 1996
_____

Before BOWMAN, BRIGHT, and LOKEN, Circuit Judges.
_____

LOKEN, Circuit Judge.

Keith Hawkins appeals his conviction and 210-month sentence for possession with intent to distribute cocaine base. He raises suppression, trial, and sentencing issues on appeal. We affirm.

**I.**

An informant told Little Rock police that Hawkins was dealing crack cocaine out of his home. Police employed the informant to make a controlled drug buy and then obtained a warrant to search Hawkins's home later that day. To execute the warrant, members of the Little Rock Police Department's "SWAT" team entered the house without knocking or announcing, handcuffed Hawkins, and placed him

on the floor. Narcotics Division officers, including Detective Kyle King, then entered to conduct the warrant search.

King had prior contact with Hawkins and upon entering helped the handcuffed Hawkins into a kitchen chair. Hawkins said, "King, there ain't nothing in my house." King replied that police knew there were drugs in the house and Hawkins "could make it easier on himself" if he disclosed where they were hidden. Hawkins repeated that there were no drugs in the house. A few minutes later, another detective found 3.8 grams of crack cocaine in a potted plant. With illegal drugs now discovered, Hawkins asked to speak in private with Detective King. When they were alone, Hawkins asked King, "What can I do to help myself? I got to help myself." Hawkins then volunteered that he was only selling small quantities of cocaine. He also named two of his suppliers and offered to cooperate with the police in securing their arrest. Hawkins was not advised of his rights under Miranda v. Arizona, 384 U.S. 436 (1966), until later that evening when he was taken to the police department annex for further questioning and again made incriminating statements.

Prior to trial, the district court[1] denied Hawkins's motions to suppress his incriminating statements and the physical evidence seized at his home. This evidence was admitted at trial. The jury convicted Hawkins of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1). Although he argues on appeal that he was convicted on insufficient evidence because many people had access to his home, the evidence viewed in the light most favorable to the government is clearly sufficient to convict Hawkins of this offense. See, e.g., United States v. Nunn, 940 F.2d 1128, 1132-33 (8th Cir. 1991).

---

[1]The HONORABLE HENRY WOODS, United States District Judge for the Eastern District of Arkansas.

## II.

Hawkins argues that the district court erred in refusing to suppress his incriminating statements because Detective King's initial suggestion that Hawkins should tell the search team where illegal drugs were hidden in the house was a Miranda violation that tainted all subsequent incriminating statements. We review the district court's decision on a motion to suppress for clear error. See United States v. Cordova, 990 F.2d 1035, 1037 (8th Cir.), cert. denied, 510 U.S. 870 (1993); United States v. Eisenberg, 807 F.2d 1446, 1449-50 (8th Cir. 1986).

The government concedes that Hawkins was in custody by the time Detective King entered the house. But the issue is whether King engaged in custodial interrogation. Hawkins initiated the conversation by telling King there were no drugs to be found. King responded that police knew there were drugs at the scene and that Hawkins would make things easier by disclosing their location. Predictably, Hawkins repeated his denial, and King said no more. King and the other officers were there to search Hawkins's home, not to interrogate him, and that is what they proceeded to do. King's brief exchange with Hawkins, prompted by the latter's exculpatory assertion, was not interrogation because this was not a situation in which King "should have known [that his words] were reasonably likely to elicit an incriminating response." Rhode Island v. Innis, 446 U.S. 291, 303 (1980).

Moreover, Hawkins made no incriminating statements until cocaine was found and he asked to speak with Detective King in private. "Miranda does not protect an accused from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers." Butzin v. Wood, 886 F.2d 1016, 1018 (8th Cir. 1989) (quotation omitted), cert. denied, 496 U.S. 909 (1990). Hawkins argues that he was prompted to incriminate himself by King's earlier

-3-

"inherently coercive interrogation."  But that is a fanciful characterization of Hawkins's initial exchange with Detective King. When the cocaine was found, Hawkins said to Detective King, "I got to help myself."  That statement confirms the obvious -- it was the discovery of illegal drugs in his home, not police coercion, that induced the incriminating statements.

Finally, Hawkins argues that because his initial incriminating statements were made to Detective King without <u>Miranda</u> warnings, statements he made at the stationhouse following <u>Miranda</u> warnings must be suppressed under <u>Oregon v. Elstad</u>, 470 U.S. 298, 318 (1985).  Because there was no <u>Miranda</u> violation at Hawkins's home, we need not undertake an <u>Elstad</u> analysis of the stationhouse questioning.  However, we see no evidence that the stationhouse statements were involuntary.

For the foregoing reasons, the district court properly denied Hawkins's motion to suppress his incriminating statements.

## III.

Hawkins next argues that the district court erred in denying his motion to suppress evidence seized during the warrant search of his house because the police did not "knock and announce" before entering.  Hawkins's reliance on 18 U.S.C. § 3109 is misplaced. The trial evidence confirms that the search was conducted entirely by local police officers executing a state court warrant. "Section 3109 does not apply in cases involving state officers executing state warrants."  <u>United States v. Murphy</u>, 69 F.3d 237, 242 (8th Cir. 1995), <u>cert. denied</u>, 116 S. Ct. 1032 (1996).

Hawkins also based this motion to suppress on "constitutional" grounds and correctly argues that common law knock-and-announce principles are part of the Fourth Amendment reasonableness inquiry. <u>See</u> <u>Wilson v. Arkansas</u>, 115 S. Ct. 1914 (1995).  However, even

assuming that an unreasonable no-knock entry would require suppression of evidence seized in the subsequent search -- a question the Supreme Court expressly left open in Wilson, 115 S. Ct. at 1919 n.4 -- the common law recognized that a no-knock entry may be reasonable "in situations involving threats of physical violence, prisoner escapes, and likely destruction of evidence." Murphy, 69 F.3d at 243. Here, a member of the SWAT team testified that Hawkins's house was considered a "high risk entry" because it was barricaded by barred security doors and windows. Defense counsel did not cross examine the witness or present contrary evidence on this issue. On this record, Hawkins's constitutional claim was properly rejected.

## IV.

Hawkins next challenges his sentence as a career offender. The primary issue is whether a prior conviction was for conspiracy to deliver cocaine, a career offender predicate offense, or for possession of a controlled substance. See U.S.S.G. § 4B1.2(2). The government placed in evidence numerous documents confirming that the conviction was for conspiracy to deliver cocaine, including the plea transcript, a signed plea statement, the trial judge's docket sheet, the judgment and commitment order, and the Arkansas Department of Corrections admission summary. Hawkins countered with the prosecutor's file jacket, which contains a notation that Hawkins pleaded guilty to possession of cocaine. On this record, the district court's finding that the conviction was for a career offender predicate offense is not clearly erroneous. See United States v. Oehlenschlager, 76 F.3d 227, 229 (8th Cir. 1996) (standard of review).[2]

---

[2]Hawkins also argues that conspiracy is not a "controlled substance offense" for purposes of U.S.S.G. § 4B1.2(2). However, we are bound by this court's contrary decision in United States v. Mendoza-Figueroa, 65 F.3d 691 (8th Cir. 1995) (en banc), cert. denied, 116 S. Ct. 939 (1996).

**V.**

We have carefully considered Hawkins's remaining contentions and conclude that each is without merit.  The contention that he deserves a criminal history downward departure under U.S.S.G. § 4A1.3 is not reviewable on appeal because the district court was aware that it had authority to depart but declined to do so.  In denying a departure, the court stated, "on the basis of what I've heard I'm not going to depart."  See United States v. Bieri, 21 F.3d 811, 817-18 (8th Cir.), cert. denied, 115 S. Ct. 208 (1994).

Finally, Hawkins challenges the district court's decision to give an "Allen" charge after the jury had deliberated for five hours and delivered a note advising they were deadlocked on two of the four counts.  After the court gave the Allen charge, the jury deliberated two to three more hours before returning its verdict. Based upon the unobjectionable text of this charge and the length of time the jury deliberated, we conclude the supplemental charge was not unduly coercive.  See United States v. Thomas, 946 F.2d 73, 76 (8th Cir. 1991); United States v. Young, 702 F.2d 133, 135-36 (8th Cir. 1983); United States v. Singletary, 562 F.2d 1058, 1060-61 (8th Cir. 1977).

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-6-