# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1730

_____

| | |
|---|---|
| United States of America, | * |
| | * Appeal from the United States |
| Plaintiff - Appellee, | * District Court for the |
| | * Western District of Missouri |
| v. | * |
| | * [PUBLISHED] |
| Jimmie D. Poe, | * |
| | * |
| Defendant - Appellant. | * |
| | * |
| | * |
| | * |
| | * |
| | * |

_____

Submitted: June 12, 2006
Filed: September 19, 2006

_____

Before LOKEN, Chief Judge, ARNOLD, Circuit Judge, and DOTY,[1] District Judge.

_____

DOTY, District Judge.

Jimmie D. Poe entered a conditional plea of guilty to the charge of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), following the district

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota, sitting by designation.

court's[2] denial of his motion to suppress evidence seized during a warrantless search of his home. Poe appeals the district court's decision, and we affirm.

## I.    BACKGROUND

On November 12, 2004, Officers Daniel Graham, Kane Northcutt and Bruce Stafford of the Ozark  Police Department, Ozark, Missouri, arrived at a residence to investigate a report of a stolen vehicle.  Upon their arrival, the officers observed a vehicle parked in the grass behind the duplex and confirmed that the vehicle had been reported stolen. Neighbors informed the officers that the resident was probably home and that they had seen him transferring items from the back of the truck into the duplex.  Graham knocked at the front door of the residence and announced his presence.  There was no response.

While Graham was knocking on the front door, Northcutt positioned himself at the back door of the residence.  With nothing impeding his ability to see through the sliding glass door, Northcutt saw Poe looking out a front window at Graham. Upon observing Poe, Northcutt knocked on the sliding door and ordered Poe to open the door.  Poe turned, looked at Northcutt and picked up a 12-gauge shotgun. Northcutt yelled to Stafford that Poe had a firearm and attempted to radio that information to Graham.

At that point, after ten to fifteen minutes of knocking Graham heard yelling and a commotion from behind the residence and static on his radio.  Although aware that

---

[2] The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri, adopting the Report and Recommendation of the Honorable James C. England, Magistrate Judge for the Western District of Missouri.

Northcutt and Stafford were attempting to contact him, Graham could not discern what they were saying. Graham told the spectators who were present to return to their homes. Stafford ran towards the front of the duplex to tell Graham that Poe had a gun. Although Graham saw Stafford come around the side of the duplex he did not hear what Stafford was saying because, at that moment, Poe opened the door. According to Graham, Poe did not say anything but rather stood back and looked at him. Graham believed that Poe was giving himself up. Graham entered the home, handcuffed Poe inside the front door and read him his Miranda rights. Poe did not verbally consent or object to Graham's entry. Rather, Graham testified that based upon Poe's facial expressions and actions he believed Poe to be indicating "this is over, come on in." (Jt. App. at 5.) After acknowledging that he understood his Miranda rights, Poe waived those rights and told Graham that he was willing to talk and that someone had brought the stolen truck to him.

Upon entering the residence, Graham immediately observed a shotgun on an end table approximately ten feet from the door. Prior to entering the residence, Graham did not know that Poe possessed a firearm because Northcutt and Stafford had not successfully conveyed that information. Graham asked Poe where the gun came from, and Poe responded that the gun was from the stolen truck. Graham then asked Poe if he was a felon, and Poe said yes. Upon searching Poe's person, Graham found keys to the stolen truck in a pocket. Poe was subsequently charged in a one-count indictment with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

In a motion to suppress, Poe argued that his Fourth Amendment rights were violated when Graham entered and searched his residence without a warrant. Following an evidentiary hearing, the magistrate judge determined that Graham had probable cause to believe that illegal activity was occurring within the duplex and that exigent circumstances existed to justify entering the home based upon Graham's

concern for officer and public safety. The magistrate judge rejected as unpersuasive Poe's argument that Northcutt violated his Fourth Amendment rights when he looked into the duplex through the sliding glass door. The district court adopted the report and recommendation of the magistrate judge, and denied Poe's motion to suppress.

On appeal, Poe argues that probable cause and exigent circumstances did not exist to support Northcutt's visual search of the duplex through the back door or Graham's entry into the residence. Poe further argues that because Northcutt's observation of the firearm was a result of a violation of his Fourth Amendment rights, the exclusionary rule bars the use of Northcutt's observation that Poe possessed a firearm to support Graham's subsequent warrantless entry.

## II.    DISCUSSION

We review the district court's factual determinations in support of its denial of a motion to suppress for clear error and its legal conclusions de novo. United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005). The Fourth Amendment guarantees the right of individuals "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . .." U.S. Const. amend. IV. In accordance with that guarantee, a warrantless search of a home must be supported by consent or probable cause and exigent circumstances. Anderson v. Creighton, 483 U.S. 635, 641 (1987); Radloff v. City of Oelwein, 380 F.3d 344, 348 (8th Cir. 2004). The Fourth Amendment draws a firm line at the threshold of a residence because "at the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." Payton v. New York, 445 U.S. 573, 589-90 (1980) (internal quotations omitted).

-4-

Probable cause exists when, "given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." Kleinholz v. United States, 339 F.3d 674, 676 (8th Cir. 2003) (internal quotations omitted). Exigent circumstances exist if an objectively reasonable officer on the scene would have sufficient grounds to believe an exigency existed. United States v. Schmidt, 403 F.3d 1009, 1013 (8th Cir. 2005). Although exigent circumstances typically involve a threatened life, imminent escape of a suspect or the destruction of evidence, an exigency may also exist if there is a "compelling need for official action and there is no time to secure a warrant." Radloff, 380 F.3d at 348 (citing Michigan v. Tyler, 436 U.S. 499, 509 (1978)). A legitimate concern for officer safety or the safety of others may constitute an exigent circumstance, and a warrantless entry into a residence may be justified if an officer has a reasonable fear of harm. United States v. Hill, 430 F.3d 939, 941 (8th Cir. 2005). "Unexpected and dangerous events that arise during an arrest can create exigent circumstances that justify law enforcement officers entering a residence in order to protect themselves from any additional and unknown threats." Id.

To the extent the government argues that Poe's actions constituted implied consent to Graham's entry, we disagree. We examine the totality of the circumstances to determine whether consent was voluntary or coerced. United States v. Smith, 973 F.2d 1374, 1376 (8th Cir. 1992). Although a person who opens a door in response to a simple knock by officers knowingly exposes to the public that which can be seen through the door, United States v. Deanda, 73 F.3d 825, 825-26 (8th Cir. 1996), we have held that one who does so in response to a demand under color of authority does not open the door voluntarily. United States v. Conner, 127 F.3d 663, 666 (8th Cir. 1997). Poe opened the door following over ten minutes of persistent knocks and requests by Graham, officers were stationed at both doors of the duplex and Northcutt had commanded Poe to open the door. A reasonable person in Poe's situation would have concluded that he had no choice but to acquiesce and open the door. See United States v. Jerez, 108 F.3d 684, 692-93 (7th Cir. 1997) (no voluntary consent where

reasonable person would believe compliance with officers' commands required). Therefore, Poe's actions did not constitute implied consent.

Poe contends that probable cause did not exist to support Graham's search of the residence because the officers had already located the object of their investigation, the stolen vehicle. We disagree. The officers arrived at Poe's residence in response to a report of a stolen vehicle. Upon their arrival, Poe's neighbors informed the officers that he was home and that they had observed him transferring items from the truck into the house. The officers could have reasonably believed that there was a fair probability that Poe had removed contraband from the vehicle and taken it into the residence. Therefore, probable cause existed to support a search of the duplex.

Poe further argues that any belief that exigent circumstances existed is reliant upon what Northcutt observed, an observation that he alleges was obtained through unconstitutional means. However, Graham never became aware of what Northcutt observed, and Northcutt's observation is inapposite to the relevant inquiry, which is: whether the facts and circumstances known by Graham at the time he entered the duplex to arrest Poe were sufficient to cause a reasonable officer to believe an exigent circumstance existed. See United States v. Cooper, 168 F.3d 336, 339 (8th Cir. 1999) (proper inquiry considers facts and circumstances known to officer).

The government argues that under the collective knowledge doctrine the knowledge of Stafford and Northcutt that Poe possessed a firearm should be imputed to Graham. We routinely look to the collective knowledge of all officers involved in an investigation to determine whether probable cause exists provided there is some degree of communication among the relevant officers. United States v. Horne, 4 F.3d 579, 585 (8th Cir. 1993). We have extended the collective knowledge doctrine to impute knowledge in contexts other than probable cause when officers on a scene are functioning as a team, rather than independent actors. See, e.g., United States v.

Terry, 400 F.3d 575, 581 (8th Cir. 2005) (knowledge of protective order); United States v. Gillette, 245 F.3d 1032, 1034 (8th Cir. 2001) (knowledge of consent to search); United States v. Wright, 641 F.2d 602, 606 (8th Cir. 1981) (knowledge of prior felony conviction). The three officers undeniably acted as a team on March 23 and Stafford and Northcutt were in fact attempting to convey their knowledge to Graham at the time he entered the duplex. For the reasons that follow, however, we find that Graham could have legitimately been concerned for his safety and the safety of others without knowing what Northcutt saw.[3] Therefore, we need not determine whether an exigent circumstance justifying a warrantless entry can exist on the basis of imputed knowledge.

Graham testified that he was concerned for the safety of the neighbors who were standing by as well as the officers present at the scene based upon the felonious nature of the underlying offense and the subsequent commotion he heard. Following Poe's failure to open the door, Graham advised the neighbors who were present to return to their homes. When Poe ultimately opened the door and stepped back, Graham had been knocking and announcing his presence for over ten minutes. Immediately prior to the door opening, Graham heard commotion coming from behind the residence, yelling and static on his radio. Graham knew that the static was coming from Northcutt. He contemporaneously became aware that Stafford was running to the front of the house but did not hear what Stafford was saying because he was focused on the opening door. Graham did not know who was in the home, whether Poe or anybody else was armed, what had transpired behind the duplex to give rise to the sudden commotion or what his colleagues were urgently attempting to tell him. Under these circumstances, we find that Graham could have reasonably and legitimately been concerned for his safety as well as the safety of others present at the

_____

[3] Because Northcutt's observation is not necessary to find an exigent circumstance existed, we need not resolve Poe's argument that Northcutt violated the Fourth Amendment by looking into the duplex through the rear sliding glass door.

scene. Therefore, exigent circumstances existed to justify Graham's limited entry into the duplex to handcuff and arrest Poe.

Under the plain view doctrine, an officer may seize an object without a warrant if the officer did not violate the Fourth Amendment to arrive at the place from which the object was in plain view, the object's incriminating character was immediately apparent and the officer had a lawful right of access to the object. <u>United States v. Collins</u>, 321 F.3d 691, 694 (8th Cir. 2003). Because Graham did not violate the Fourth Amendment by entering the duplex, he could lawfully seize the firearm, as well as any other incriminating object, that was in plain view from the threshold of the doorway.

## III.   CONCLUSION

For the reasons stated, we affirm the district court's denial of Poe's motion to suppress.

_____