# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1890

_____

United States of America,          *
                                    *
          Appellee,         *
                                    *
     v.                    *
                                    *
Alfonso Cisneros-Gutierrez,     *
                                    *
          Appellant.       *

_____

No. 09-2590

_____

Appeals from the United States
District Court for the
Western District of Missouri.

United States of America,    *
                                    *
          Appellee,       *
                                    *
     v.                    *
                                    *
Gerardo Cisneros-Gutierrez,    *
                                    *
          Appellant.       *

_____

No. 09-2728

_____

United States of America,    *
                                    *
          Appellee,       *
                                    *

|                              |     |
|------------------------------|-----|
|                          v.  |  *  |
|                              |  *  |
| Alfredo Cisneros-Gutierrez,  |  *  |
|                              |  *  |
|                  Appellant.  |  *  |

_____

Submitted:  December 16, 2009
Filed:  March 23, 2010

_____

Before WOLLMAN, RILEY, and MELLOY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Alfonso Cisneros-Gutierrez (Alfonso) and Gerardo Cisneros-Gutierrez (Gerardo) entered conditional pleas of guilty to charges of conspiracy to distribute methamphetamine and possession of firearms in furtherance of a drug trafficking crime.  Alfredo Cisneros-Gutierrez (Alfredo) entered a conditional plea of guilty to a charge of conspiracy to distribute methamphetamine.  They each reserved the right to appeal the district court's[1] denial of their motions to suppress evidence and statements obtained pursuant to the searches of multiple residences.  We affirm.

I.

During a drug investigation in 2007, law enforcement officers searched three residences in Kansas City, Missouri.  Based on information from a confidential informant, Special Agent Mark King of Immigration and Customs Enforcement set up surveillance of 323 South Brighton Avenue on July 12, 2007.  Additional officers

_____

[1]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri, adopting the report and recommendation of the Honorable John T. Maughmer, United States Magistrate Judge for the Western District of Missouri.

joined King, and they decided to conduct a "knock-and-talk."[2]   The officers approached the residence and knocked on the door, which was then opened by Justino Ruiz-Ramos.  After entering the common entry way to the apartments, the officers asked Ruiz-Ramos for consent to search the apartment, to which Ruiz-Ramos responded by saying that he did not live there.  While police were trying to determine if Ruiz-Ramos lived at the apartment, Salvador Jesus Velasco-Saldana opened the door, identified himself as the sole resident, and consented to a search of the premises. The search revealed methamphetamine, Animed MSM (a substance commonly used to cut methamphetamine), a digital scale, a firearm, and ammunition.  The officers interviewed Ruiz-Ramos the following day and were told that Gerardo had sold him three pounds of crystal methamphetamine, which Gerardo's brother had delivered. Ruiz-Ramos did not know the brothers' exact address, but he drew a map detailing the location of their residence.

Based on that information, King, Detective Luis Ortiz of the Kansas City, Missouri Police Department Gang Unit, and five or six other officers performed a knock-and-talk at 430 Donnelly Avenue at 6:30 a.m. on July 24, 2007.  When Ortiz and King knocked on the door, Miguel Angel Garcia-Bobadilla answered the door and the officers identified themselves as law enforcement, explaining that they were conducting a narcotics investigation.  In response to their request, Garcia-Bobadilla told the officers that they could enter.  Once inside, the officers asked Garcia-Bobadilla if anyone else was in the residence and were told that no one else was present.  The officers requested and received permission to verify that this was the case.  During a protective sweep, Ortiz encountered Alfredo and Dehli Hernandez-Pena moving between rooms.  Questioning ensued and Alfredo and Garcia-Bobadilla said that they lived in the apartment.  They gave verbal and written consent to search

---

[2]A "knock-and-talk" is an investigatory technique in which law enforcement officers approach the door of a dwelling seeking voluntary conversation and consent to search.  United States v. Wise, 588 F.3d 531, 534 n.3 (8th Cir. 2009).

the residence. The written form was in English, and Ortiz explained the form in Spanish. According to the officers, they did not brandish their weapons during this encounter. A search of the premises resulted in the recovery of more than 230 grams of methamphetamine and approximately six pounds of a cutting agent.

Alfredo recounts the search differently. According to Alfredo, Ortiz had his gun drawn when Garcia-Bobadilla opened the door. Alfredo claims that Ortiz pointed the gun at Garcia-Bobadilla, forcing him to walk backwards into the living room. The officers proceeded to enter the apartment and search the premises without consent. Ortiz threatened Garcia-Bobadilla and Alfredo that the officers would search the house regardless of whether they signed the consent form. According to Alfredo, he felt that he did not have a right to leave the house. Alfredo signed the consent form. Garcia-Bobadilla also signed the consent, believing that he had no other option.

It is uncontroverted that while the search was being conducted, Hernandez-Pena told Ortiz that she wanted to cooperate. She informed Ortiz that Alfredo's brothers lived at another house in Kansas City, that they possessed large quantities of illegal narcotics and several firearms, and that they served as enforcers for the drug trafficking organization. Hernandez-Pena stated that she had been to the residence and had seen the drugs and weapons. Ortiz and another detective drove Hernandez-Pena to the vicinity of the home to confirm its location for the officers, and she identified 3907 East 12th Terrace as the brothers' residence.

Once the location was confirmed, the officers who had searched the Donnelly Avenue location came to East 12th Terrace. Ortiz and King approached the front door and the other officers deployed to the sides and back of the residence to intercept anyone who might flee the house. Ortiz and King knocked on the front door and Gerardo answered through a closed glass window adjacent to the front door. Ortiz, speaking in Spanish, identified himself and King as law enforcement officers and

explained that they were conducting a narcotics investigation. Gerardo acted confused and repeatedly asked the officers who they were and what they wanted.

While talking to Gerardo through the window, Ortiz saw Alfonso inside the house. Gerardo was speaking to Alfonso as well. Ortiz saw Alfonso enter the kitchen, immediately return in the direction from which he had come, re-enter the kitchen with three large plastic bags, and then begin washing an unknown substance down the kitchen sink. Ortiz told King and Sergeant Jay Pruetting that "something is getting flushed" down the sink. King then looked through the window at the top of the front door and saw Alfonso hurriedly leave the kitchen and enter the southwest bedroom. Alfonso exited the bedroom carrying an unknown object to an area on the west side of the residence, out of the officers' field of vision. Alfonso repeated this action one more time before convening with Gerardo. Alfonso or Gerardo eventually opened the door.

The officers entered the house with their guns drawn, handcuffed Alfonso and Gerardo, and conducted a protective sweep. During the cursory sweep, the officers observed plastic bags containing numerous empty zip-lock storage bags in the kitchen sink, a plastic bag containing a crystal-like substance on the floor in a bedroom, a bundle of United States currency, an electronic money counter and assault-style rifles. The officers detained Gerardo and Alfonso and applied for and received a state search warrant for the residence. The ensuing search produced 5880 grams of methamphetamine, more than $160,000 in cash, and four firearms.

Alfredo and Alfonso were individually questioned by Ortiz and King at police headquarters after being informed of their Miranda rights and signing Miranda waiver forms. Both Alfredo and Alfonso made inculpatory statements.

Alfredo, Alfonso, and Gerardo, along with three other defendants, were indicted on a variety of charges. Each defendant filed a motion to suppress, which the

magistrate judge recommended denying. The district court adopted the report and recommendations and each brother entered a conditional guilty plea. Alfredo was sentenced to 240 months' imprisonment; Alfonso was sentenced to 195 months' imprisonment, 135 months for conspiracy to distribute methamphetamine and 60 months for possession of firearms in furtherance of a drug trafficking crime; Gerardo was sentenced to 180 months' imprisonment.

Alfredo appeals, arguing that the evidence found at 430 Donnelly Avenue and the statement he made should be suppressed because: the consent to search was the product of coercion and not voluntarily given and the protective sweep was unnecessary because the police chose to enter the residence. Alfonso and Gerardo appeal the denial of their motions to suppress the evidence seized at 3907 East 12th Terrace, raising a number of issues. Additionally, Alfonso contends that the statements he made were tainted by the illegal search and that the district court erred in the imposition of the five-year consecutive sentence for possession of a firearm in furtherance of a drug crime.[3]

II.

We review the district court's factual determinations underlying the denial of a motion to suppress for clear error and its legal conclusions *de novo*. United States v. Hogan, 539 F.3d 916, 921 (8th Cir. 2008).

---

[3]Alfonso argues that the magistrate judge applied an incorrect legal standard when considering his motion to suppress. The report and recommendation cited the legal standard applied in Greiner v. City of Champlin, 27 F.2d 1346 (8th Cir. 1994), a qualified immunity case. Applying the appropriate standard, however, the outcome is the same.

## A. 430 Donnelly Avenue

Alfredo contends that consent to search the Donnelly Avenue residence was involuntarily given as a result of police coercion, rendering it unconstitutional. A warrantless search of a residence does not violate the Fourth Amendment if voluntary consent has been given by a resident. Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973). Consent is voluntary if it is "the product of an essentially free and unconstrained choice by its maker," rather than the "product of duress or coercion, express or implied." Id. at 225. Whether consent was voluntarily given "is a question of fact to be determined from the totality of the circumstances." Id. at 227. In determining voluntariness, the personal characteristics of the individual who supposedly consented and the environment in which the consent allegedly occurred are relevant. United States v. Chaidez, 906 F.2d 377, 381 (8th Cir. 1990).

The magistrate judge and district court credited the testimony of King and Ortiz. Credibility is a determination left to the trier-of-fact, and "its assessment is virtually unassailable on appeal." United States v. Rodriguez, 414 F.3d 837, 845 (8th Cir. 2005). Only when credibility determinations are internally inconsistent, based upon incoherent or implausible testimony, or contradicted by objective evidence is a more searching review warranted. United States v. Jones, 254 F.3d 692, 695 (8th Cir. 2001). Finding that there was no credible evidence that the officers were physically intimidating or made any promises in exchange for consent, the magistrate judge concluded that Garcia-Bobadilla voluntarily consented to a limited search of the premises to determine the presence of other individuals. The magistrate judge found that under the totality of the circumstances, Alfredo and Garcia-Bobadilla both voluntarily and knowingly consented to a full search of the residence. After reviewing the record, we find no error in the magistrate judge's determination.

Because the searches were based on knowing and voluntary consent, we need not reach Alfredo's additional arguments that officers are not entitled to a protective sweep during a knock-and-talk and that Alfredo's statements were tainted by an illegal search.

### B.  3907 East 12th Terrace

### 1.  Exigent Circumstances and Probable Cause

Alfonso and Gerardo contend that the warrantless entry of 3907 East 12th Terrrace was supported by neither exigent circumstances nor probable cause.  Police officers may not enter or search a residence without a warrant unless the entry is justified by exigent circumstances.  Payton v. New York, 445 U.S. 573, 590 (1980). "The exception justifies immediate police action without obtaining a warrant if lives are threatened, a suspect's escape is imminent, or evidence is about to be destroyed." United States v. Ball, 90 F.3d 260, 263 (8th Cir. 1996).  To evaluate "whether a warrantless entry was justified by exigent circumstances, we consider the circumstances that confronted police at the time of the entry."  United States v. Leveringston, 397 F.3d 1112, 1116 (8th Cir. 2005).  We look objectively at whether a reasonable, experienced police officer would believe evidence was in danger of removal or destruction.  See United States v. Kuenstler, 325 F.3d 1015, 1021 (8th Cir. 2003).  Not only must the government establish that an exigency existed, but also that there was probable cause to search the residence.  United States v. Munoz, 894 F.2d 292, 296 (8th Cir. 1990).

In Leveringston, we held that even though the suspect had been arrested outside the hotel room, the fact that the water and garbage disposal continued to run inside the room gave the police "grounds to believe there was a fair probability that evidence of drug trafficking—a serious felony offense—would be lost if they did not make immediate entry."  397 F.3d at 1116.  We have held in a number of cases that police

officers are justified in making an exigent-circumstances entry when, after going to a residence with evidence that an individual was involved in a drug transaction, they knock and identify themselves and then witness an individual retreat or conduct himself in a way that suggests the destruction of evidence. See Ball, 90 F.3d at 262-63 (police approached home where two men were on the porch, one was holding a weapon and then fled into the residence); Munoz, 894 F.2d at 296 (individual ran upstairs after the police knocked and identified themselves); United States v. Clement, 854 F.2d 1116, 1119 (8th Cir. 1988) (officers received no response after knocking, saw someone approach the door, look through the peephole and retreat, and heard a "scrambling" noise).

In this case, we believe that an objectively reasonable police officer, knowing the information supplied by Hernandez-Pena and observing Alfonso's and Gerardo's conduct, would conclude that there was danger of removal or destruction of evidence of a crime. Hernandez-Pena had told officers that the brothers possessed large quantities of illegal narcotics and several firearms and that they served as enforcers for the drug trafficking organization. After arriving at the house and announcing themselves, the officers witnessed evasive behavior. Gerardo and Alfonso consulted one another, following which Gerardo's feigned confusion appeared to be a delaying tactic during which Alfonso took several plastic bags to the kitchen sink and disposed of their contents. Taken together these circumstances justified the officers' warrantless entry. Additionally, under the totality of the circumstances, probable cause existed: a reasonable person would believe that there was a fair probability that drugs or evidence of drug trafficking would be found in the residence. See Kleinholz v. United States, 339 F.3d 674, 676 (8th Cir. 2003).

## 2. Curtilage

Gerardo argues that the evidence found at 3907 East 12th Terrace should be suppressed because the officers violated his Fourth Amendment right to privacy

during the knock-and-talk when they positioned themselves near the rear and sides of the house. Although the Fourth Amendment's protection extends to the curtilage surrounding a home, United States v. Weston, 443 F.3d 661, 666 (8th Cir. 2006), no Fourth Amendment search occurs when officers "restrict their movements to those areas generally made accessible to visitors—such as driveways, walkways, or similar passageways." United States v. Reed, 733 F.2d 492, 501 (8th Cir. 1984).

It is unclear from the record whether the officers were actually within the house's curtilage. Assuming, however, that Gerardo is correct that officers impermissibly entered the curtilage of his home during the knock-and-talk, suppression is not required, because the officers at the front of the house independently observed the apparent destruction of evidence and entered the home under exigent circumstances. In the majority of cases cited by Gerardo in which evidence was suppressed, the officers at the rear of a home obtained evidence while positioned there—the officers observed illicit behavior, someone threw evidence from the home or left the home.[4] See, e.g., Hobson v. United States, 226 F.2d 890, 894 (8th Cir. 1955) (suppressing package thrown into backyard). In this case, suppression is inappropriate because discovery of the evidence was unrelated to any misconduct. See Wong Sun v. United States, 371 U.S. 471, 488 ( 1963) (recognizing the issue for suppression is whether "the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint").

---

[4]The one case cited in which no evidence was obtained while the officers were impermissibly positioned in the curtilage is distinguishable because it was a qualified immunity case that did not deal with suppression. See Roybal v. City of Albuquerque, No. 08-0181, 2009 WL 1329834 (D. N.M. April 28, 2009).

### 3. Manufacturing Exigent Circumstances

Gerardo also argues that the police impermissibly manufactured the exigent circumstances. Although it is true that "the situations of urgency protected by this exception cannot be created by police officers," United States v. Duchi, 906 F.2d 1278, 1284 (8th Cir. 1990), Gerardo's argument fails under our cases that address police-created exigencies. We have explained that "in some sense the police always create the exigent circumstances that justify warrantless entries and arrests." Id. But the police do not necessarily act impermissibly any time they create an exigency in a strict causal sense. See Ball, 90 F.3d at 264 (rejecting a claim that officers manufactured an exigency when they approached a porch and an individual fled into the residence). We must determine the "reasonableness and propriety of the investigative tactics that generated the exigency." Duchi, 906 F.2d at 1284.

In Duchi, police were alerted to an undeliverable package that contained two bricks of cocaine. Id. at 1279. The police replaced one of the bricks with a book and allowed the package to be picked up from the shipping company. Id. at 1280. After the suspect returned home with the parcel, the police entered the residence without a warrant because of a fear that the evidence would be destroyed. Id. We held that the police impermissibly manufactured the exigency, because "[t]he heightened danger of destruction upon discovery was . . . reasonably foreseeable; it was in fact, the replacement strategy's probable result." Id. at 1285. Similarly, in United States v. Johnson, a postal inspector intercepted a package containing drugs, altered its contents, made a controlled delivery, and then entered the residence without a warrant because of fear that the evidence would be destroyed once the recipient realized the package had been intercepted. 12 F.3d 760, 762 (8th Cir. 1993). We held that by substituting another substance for a portion of the drugs, the officials "created, or at least greatly increased, the risk that evidence would be destroyed." Id. at 765. "Had they not altered the package's contents, there would have been little or no danger of evidence being destroyed before they obtained the search warrant." Id. Conversely,

-11-

in a situation in which the police used an investigative technique that did not foreseeably increase the likelihood of an exigency, we rejected the proposition that the police impermissibly manufactured the exigency. See United States v. Williams, 521 F.3d 902, 908 (8th Cir. 2008) (holding that the police did not manufacture the exigency that led to the warrantless entry of the motel room when the officer knocked on the door, and heard what he thought was the slide of a handgun and the rustling of blinds).

Police officers regularly rely on a knock-and-talk as an investigative strategy when they do not have enough evidence to obtain a search warrant. The knock-and-talk that was conducted in this case was a reasonable and proper investigative strategy that did not foreseeably increase the likelihood of the destruction of evidence. While the destruction of evidence is a possible result of a knock-and-talk, other likely results include the grant of consent to a search, the demand for a warrant for police entry, or a consensual conversation with the resident outside the home. Accordingly, we conclude that the police did not impermissibly manufacture the exigency in this case.

4. Protective Sweep

Alfonso and Gerardo contend that the protective sweep of the East 12th Terrace home constituted an illegal search because it was not made in connection with an arrest. They maintain that the officers did not have probable cause to arrest the brothers until they confirmed that Alfonso had been disposing of drugs upon the officers' arrival.

We conclude that the protective sweep was permissible under the principles outlined in Maryland v. Buie, 494 U.S. 325 (1990). In that case, the Court held that the Fourth Amendment permits an officer to conduct a protective sweep of the premises if there are "articulable facts which, taken together with the rational

inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Id. at 334. We have declined to extend Buie to a search incident to the service of a protection order when officers had no articulable facts suggesting that another individual might be in the home, ready to launch an attack. United States v. Waldner, 425 F.3d 514, 517 (8th Cir. 2005). But see id. (Murphy, J., concurring) (explaining that this holding does not necessarily foreclose all protective sweeps when officers are serving a protection order).

Given the circumstances, we hold that a reasonable officer could conclude that it was necessary for his safety to secure the premises before obtaining a warrant. There was a reasonable possibility that other individuals were in the home, posing a danger to the officers. The officers had been told that the brothers possessed large quantities of illegal narcotics and several firearms and that they served as enforcers for the drug trafficking organization. They had observed Gerardo's evasive behavior, and Alfonso's actions were consistent with that of someone destroying evidence. Accordingly, the protective sweep was permissible.

### 5. Search Warrant and Alfonso's Statement

We conclude that Alfonso's and Gerardo's remaining arguments are without merit. Having determined that the entry and protective sweep were legal, the information included in the affidavit supporting the search warrant was not illegally obtained and it provided the requisite probable cause to support the search warrant. Alfonso's argument that his post-Miranda statements were tainted by an illegal search also fails because the search of the East 12th Terrace residence was lawful.

## C.  Sentencing

Alfonso contends that the district court erred in imposing a consecutive five-year sentence for possession of a firearm in furtherance of a drug crime under 18 U.S.C. § 924 (c)(1)(A) after imposing the 135 months' sentence on the predicate drug trafficking offense.  Alfonso argues that the language "[e]xcept to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law" means that because he was subject to a longer mandatory minimum sentence for a drug offense, the mandatory consecutive sentence under § 924 (c)(1)(A) does not apply.  This argument is contrary to our established precedent.  See United States v. Alaniz, 235 F.3d 386, 386 (8th Cir. 2000) (holding that the "greater minimum sentence" refers only to sentences for various types of conduct proscribed in § 924 (c)(1), not for the underlying drug offense).[5]  Having disposed of this issue based on the merits, we decline to reach the government's argument that Alfonso expressly waived his right to appeal his sentence.

## III.

The judgment is affirmed.

_____

---

[5]We note, however, that the Supreme Court has granted certiorari in United States v. Abbott, 574 F.3d 203 (3d Cir. 2009), cert. granted, 2010 WL 250514 (Jan. 25, 2010) (No. 09-479), which presents the following question: whether the term "any other provision of law" in 18 U.S.C. § 924(c)(1)(a) includes the underlying drug trafficking offense or crime of violence.