UNITED STATES of America, Plaintiff,

v.

**$35,140.00 IN UNITED STATES CURRENCY, Defendant.**

**No. 8:15CV195.**

United States District Court, D. Nebraska.

Signed Sept. 15, 2015.

Douglas J. Amen, Nancy A. Svoboda, U.S. Attorney's Office, Omaha, NE, for Plaintiff.

J. William Gallup, Gallup Law Firm, Omaha, NE, for Defendant.

## MEMORANDUM AND ORDER

LAURIE SMITH CAMP, Chief Judge.

This matter is before the Court on the Findings and Recommendation (Filing No. 28), issued by Magistrate Judge F.A. Gossett recommending that the Motion to Compel (Filing No. 10) filed by the Claimant, Jonathan A. Shulkin ("Claimant"), be denied. Claimant filed an Objection to the Findings and Recommendation (Filing No. 29) as allowed by 28 U.S.C. § 636(b)(1)(C). The Government did not respond to the Defendant's Objection. For the reasons set forth below, the Findings and Recommendation will be adopted, and the Motion to Compel will be denied.

## BACKGROUND

Claimant does not object to the Magistrate Judge's factual findings and they are adopted in their entirety. The following facts are provided and summarized by way of background. On January 7, 2015, Richard Lutter ("Lutter"), an investigator with the Nebraska State Patrol, together with other law enforcement officers conducted a review of the passenger manifest of a passenger train at the Omaha Amtrak railroad station. Based upon their review, officers had concerns about the Claimant because his ticket from Iowa to Sacramento, California, was purchased less than 48 hours prior to departure.

Lutter boarded the train and knocked on Claimant's sleeper cabin door and asked Claimant if he could speak with him. Lutter then engaged Claimant in conversation about his travel plans and asked him whether he had any drugs or large amounts of money, to which Claimant responded, "no." Lutter then asked for permission to search. Lutter testified at the hearing on the Motion to Compel that while Claimant gave no verbal response to his question, Claimant offered the bag to Lutter and did not object to the search. Lutter found three bundles in Claimant's backpack which, based upon Lutter's experience and training, he perceived to be bundles of currency. Lutter eventually seized $35,140.00 (the "Defendant Currency") found within Claimant's carry-on backpack and checked luggage. The Government instituted forfeiture proceedings on the Defendant Currency on June 1, 2015 (Filing No. 1).

On June 23, 2015, Claimant moved to compel the government to return the Defendant Currency to Claimant. Claimant argues that the Court lacks jurisdiction to enforce the forfeiture of the Defendant Currency because the Government instituted these forfeiture proceedings after January 16, 2015, the date the United States Department of Justice instituted a new policy (the "Policy") prohibiting the Government from causing money to be forfeited if it was seized by local law enforcement agencies in a manner not necessary to protect public safety. (Filing No. 10 at 2.) Claimant also argues that Lutter illegally seized the Defendant Currency because Lutter lacked any legal justification to support a warrantless seizure.

The Magistrate Judge held a hearing on Claimant's Motion to Compel on July 21, 2015 (Filing No. 23; see also Transcript of Hearing ("Tr."), Filing No. 31.) The Magistrate Judge concluded that the Policy did not vest Claimant with any enforceable rights. (Filing No. 28 at 3.) Further, the Magistrate Judge concluded that Lutter lawfully conducted a "knock and talk" with Claimant and obtained Claimant's consent to search his bag. (Filing No. 28 at 5–6.) Claimant argues the Magistrate Judge erred in concluding that the forfeiture was not barred by the Policy. Claimant further argues the Magistrate Judge erred in concluding that Lutter seized the Defendant Currency through legal means.

## STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(C), the Court must make a de novo determination of those portions of the findings and recommendation to which the Defendants have objected. The Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendation. Id. The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions. Id.

## DISCUSSION

### I. The Policy.

Claimant argues that the Magistrate Judge erred in concluding that

Claimant had no right to enforce the Policy. The Magistrate Judge cited *United States v. Gruttadauria*, 439 F.Supp.2d 240, 247 (E.D.N.Y.2006). In *Gruttadauria*, a defendant moved to dismiss an indictment based on a federal government policy known as the *"Petite* policy"[1] which was "an internal statement by the United States Attorney General setting forth guidelines for federal prosecutors regarding dual and successive federal prosecutions." *Id.* (quoting *United States v. Ng*, 699 F.2d 63, 66 n. 3 (2d Cir.1983)). The defendant in *Gruttadauria* had been arrested for possession of gambling equipment, and argued that under the *Petite* policy, his state arrest should have prevented federal prosecution. The court rejected this argument, concluding that it was "well-settled that the Petite policy "affords defendants no substantive rights. It is 'merely an internal guideline for exercise of prosecutorial discretion, not subject to judicial review.' " " *Id.* (quoting *United States v. Catino*, 735 F.2d 718, 725 (2d Cir.1984)); *see also Ng*, 699 F.2d at 71. Adopting the reasoning from *Gruttadauria*, the Magistrate Judge concluded that the Policy at issue in this case was likewise an internal guideline and did not vest Claimant with any enforceable rights. The Court agrees. Claimant cites no law supporting the proposition that the Policy afforded him substantive rights, nor is there any indication that the Policy somehow deprives this Court of jurisdiction in this case.

In support of his argument, Claimant cites cases involving a publicly announced policy of the Internal Revenue Service that required agents, on first contact with a taxpayer, to advise the taxpayer of the agent's function of investigating possible criminal tax fraud and inform the taxpayer of the right to remain silent and to obtain counsel. *See, e.g. United States v. Leahey*, 434 F.2d 7, 7–8 (1st Cir.1970). In *Leahey*, the First Circuit concluded that due process required the IRS to follow its announced procedure for two reasons: First, the court reasoned that the objective of uniform conduct of all IRS agents would not be met without judicial review because otherwise there would be no incentive for the IRS to scrutinize the conduct of its agents. *Id.* at 10. Second, the IRS announced the policy to the public in direct response to inquiries about protecting constitutional rights of those suspected of criminal tax fraud. *Id.* at 10–11.

The reasoning applied by the First Circuit does not apply to the Policy in this case. Despite its conclusion regarding the IRS policy at issue in *Leahey*, the First Circuit specifically noted:

> We do not say that agencies always violate due process when they fail to adhere to their procedures. It is important here that the procedure set forth in the news release was an agency wide directive designed to protect taxpayers by setting a clear and uniform standard governing the first contact between a Special Agent and a tax fraud suspect. Our result would have been different if the I.R.S. had violated a procedure designed to promote some other agency goal.

*Id.* at 11. In this case, there is no indication that the Policy was enacted specifically to protect those affected by federal seizure of property during state arrests. Unlike the policy at issue in *Leahey*, the Policy in this case provides no indication that it was enacted to address a claimant's

---

1. The Petite policy was named after *Petite v. United States*, 361 U.S. 529, 530, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960) (granting government's motion to remand to dismiss the indictment as contrary to the government's policy against multiple prosecutions based on the same conduct).

due process rights. On its face, the Policy affords no substantive rights, and appears to be "merely an internal guideline for exercise of prosecutorial discretion, not subject to judicial review." *Catino*, 735 F.2d at 725. Accordingly, the Magistrate Judge did not err in concluding that the Policy afforded no rights to Claimant.

## II. Consent to Search

■■■ Claimant argues that the Magistrate Judge erred in concluding that Lutter's contact with Claimant was justified. The Magistrate Judge noted that it is not a violation of the Fourth Amendment "to knock on a door without probable cause." *United States v. Spotted Elk*, 548 F.3d 641, 655 (8th Cir.2008). "No Fourth Amendment search occurs when police officers who enter private property restrict their movements to those areas generally made accessible to visitors—such as driveways, walkways, or similar passageways." *Id.* (quoting *United States v. Reed*, 733 F.2d 492, 501 (8th Cir.1984)). However, "a police attempt to 'knock and talk' can become coercive if the police assert their authority, refuse to leave, or otherwise make the people inside feel they cannot refuse to open up." *Id.* (citing *United States v. Poe*, 462 F.3d 997, 1000 (8th Cir.2006)). Claimant does not directly challenge the propriety of the "knock and talk" in his brief, nor is there any evidence demonstrating that Claimant would have felt obligated to open the door of his sleeping cabin. *See id.* Lutter's movements were limited to the public walkway in the train's sleeper car. Further, the evidence, including the video of Claimant's encounter with Lutter, does not show that Lutter commanded or ordered Claimant to open the door and speak with Lutter, nor is there any suggestion that Lutter refused to leave or was unusually persistent. *See id.* Although Lutter immediately identified himself as law enforcement, there is no indication that he was unduly coercive. Accordingly,

the Magistrate Judge did not err in concluding that Lutter conducted a valid "knock and talk" with Claimant.

■■■ Claimant's principal argument is that the Magistrate Judge erred in concluding that Claimant consented to a search of his carry-on bag. "Consent is voluntary if it is the product of an essentially free and unconstrained choice by its maker, rather than the product of duress or coercion, express or implied." *United States v. Cisneros–Gutierrez*, 598 F.3d 997, 1003 (8th Cir.2010) (internal marks and citation omitted). The Eighth Circuit has noted that "consent 'can be inferred from words, gestures, or other conduct.'" *United States v. Rogers*, 661 F.3d 991, 994 (8th Cir.2011) (quoting *United States v. Pena–Ponce*, 588 F.3d 579, 584 (8th Cir. 2009)). "The precise question is not whether [someone] consented subjectively, but whether his conduct would have caused a reasonable person to believe that he consented." *United States v. Jones*, 254 F.3d 692, 695 (8th Cir.2001).

■■■ The Court's review of the video of the encounter between Claimant and Lutter does not suggest that Claimant's consent was the product of duress or coercion. When Lutter asked Claimant if Lutter could conduct a quick search of the sleeper room and bag, Claimant began opening compartments of the bag and went through them. Lutter then asked Claimant if he could look through the bag to which Claimant responded, "I guess so if you have to, yeah sure" and handed the bag to Lutter. (Govt. Ex. 2 at mins. 7:08–7:15.) Based on this evidence, the Court cannot conclude that Claimant's consent was involuntary. A reasonable person in Lutter's position could believe that Claimant consented to the search.

Claimant nevertheless asserts that persons carrying contraband who do not admit guilt would never consent to a search by police. *See Higgins v. United States*,

209 F.2d 819, 820 (D.C.Cir.1954) ("But no sane man who denies his guilt would actually be willing that policemen search his room for contraband which is certain to be discovered."). However, "this rule has been overwhelmingly rejected by other courts." *United States v. Kelly,* 913 F.2d 261, 267 n. 3 (6th Cir.1990); *see also United States v. Mendenhall,* 446 U.S. 544, 555, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *United States v. Williams,* 754 F.2d 672, 675–76 (6th Cir.1985); *United States v. Manchester,* 711 F.2d 458, 462 (1st Cir. 1983); *United States v. Robinson,* 625 F.2d 1211, 1218–19, n. 12 (5th Cir.1980); *United States v. Ciovacco,* 518 F.2d 29, 30–31 (1st Cir.1975); *United States v. Piet,* 498 F.2d 178, 182 (7th Cir.1974); *Leavitt v. Howard,* 462 F.2d 992, 997 (1st Cir.1972). For the same reasons discussed in each of these cases, the Court does not find Claimant's argument persuasive. Claimant's words and conduct demonstrate that a reasonable person could believe that Claimant consented to the search of his carry-on bag. Accordingly, the Magistrate Judge's conclusion was not erroneous.

## CONCLUSION

For the reasons discussed, the Findings and Recommendation will be adopted, and the Motion to Compel will be denied.

IT IS ORDERED:

1. The Findings and Recommendation (Filing No. 28), are adopted;

2. The Motion to Compel (Filing No. 10) filed by the Claimant, Jonathan A. Shulkin, is denied; and

3. The Claimant's Objection to the Findings and Recommendation (Filing No. 29) is overruled.

## FINDINGS AND RECOMMENDATION

F.A. GOSSETT, United States Magistrate Judge.

This matter is before the Court on Claimant Jonathan Shulkin's ("Claimant")

motion for the return of the defendant currency and for suppression of that currency as evidence in this forfeiture action. (Filing 10.) A hearing on this matter was held before the undersigned on July 21, 2015. Having heard and studied the evidence on this matter, and for the reasons explained below, the undersigned will recommend to Chief United States District Court Judge Laurie Smith Camp that Claimant's motion be denied.

## FACTS

On January 7, 2015, Richard Lutter ("Lutter"), an investigator with the Nebraska State Patrol, and other law enforcement officers were at the Omaha railroad station checking the railroad passenger manifest. The officers' review of the manifest led to concerns about a ticket purchased with cash by Claimant. The ticket was purchased less than 48 hours prior to Claimant's planned departure from Iowa to Sacramento, California. At the hearing on this matter, Lutter testified that given experience as an interdiction officer, he was concerned about tickets purchased for cash near the departure time to places like Sacramento, California because, based on his experience, many such people were couriers bringing cash to the west coast. Lutter had no further information on Claimant and did not run a records check.

On account of Lutter's concerns regarding Claimant's ticket purchase, Lutter boarded the train and knocked on Claimant's compartment door. He asked Claimant, "may I speak with you?" Claimant responded, "okay." Lutter then engaged Claimant in conversation about his travel plans and later asked him whether he had any drugs or large amounts of money, to which Claimant responded, "no." Lutter then asked for permission to search. Lutter testified at the hearing that while

Claimant gave no verbal response to his question, Claimant offered the bag to Lutter and did not object to the search.

At the time of his contact with Claimant, Lutter was dressed in plain clothes and while he was armed, his weapon was not exposed. He showed Claimant his Nebraska State Patrol credentials on initial contact and Lutter was wearing a body camera on his hat.

The search was over with Lutter finding three bundles in Claimant's backpack which, Lutter testified that based upon his experience and training, were consistent with bundles of currency. Lutter further noted that in his experience, he had never seen anything but money packaged in that manner. Lutter then arrested Claimant, but did not inform Claimant at that time of the reason for the arrest.

On cross-examination, Lutter testified that while the State Patrol has consent-to-search forms, he did not use one on this occasion and that he found that use of such forms was less conducive to individuals giving consent to search. Lutter testified that he received no verbal consent to search from Claimant, but that he believed that consent was given or implied by Claimant's actions.

Claimant testified that he told Lutter early on in the contact that he preferred not to be searched. Claimant further testified that he believed he had no choice but to submit to Lutter's request and that he submitted out of fear based, in part, upon the fact that he is Jewish and that his father had told him stories about Jews being taken off trains in earlier times. Claimant also testified that he did not believe he lied or mis-answered the early question by Lutter as to whether he had any large sums of money because Lutter's question was limited to large sums of money involved with illegal activities.

The money was seized because law enforcement believed Claimant possessed the currency due to the sale of a controlled substance.

## DISCUSSION

In support of his motion for the return of the defendant currency, Claimant first argues that this Court lacks jurisdiction to enforce forfeiture because the forfeiture proceedings were commenced subsequent to the United States Department of Justice's adoption of a policy which provides that the Department of Justice would no longer file forfeiture actions on cash seized as the result of local law enforcement actions. (Filing 10–1.) Simply put, Claimant asserts that forfeiture is prohibited because it violates the Department of Justice's new policy regarding forfeiture proceedings. This argument is unpersuasive.

It is true that the Department adopted a policy which sets forth the Department's present course of action as it relates to seized cash. However, Claimant has offered no authority involving forfeiture proceedings to support the position that this new policy makes forfeiture proceedings in the circumstances here unconstitutional or otherwise unlawful. In fact, case law supports the opposite conclusion. In *United States v. Gruttadauria*, 439 F.Supp.2d 240 (E.D.N.Y.2006), in discussing the Department of Justice's "Petite Policy," the United States District Court stated:

> The Petite policy is an internal statement by the United States Attorney General setting forth guidelines for federal prosecutors regarding dual and successive federal prosecutions ... It is well-settled that the *Petite policy* affords defendants no substantive rights. It is merely an internal guideline for exercise of prosecutorial discretion, not subject to judicial review.

*Id.* at 247 (internal quotations and citations omitted). Like the *Petite Policy*, the Department of Justice's new policy regarding

forfeiture proceedings does not vest Claimant with any enforceable rights. Moreover, it should be noted that the policy in question here, which was adopted on January 16, 2015, was not in place at the time the currency was actually seized from Claimant. (Filing 10–1.)

Claimant next argues that the currency was seized "illegally by a Nebraska State Patrol Investigator acting without a warrant, consent, probable cause, exigent circumstances, or any other legal justification to support the warrantless seizure." (Filing 10 at CM/ECF p. 2). Claimant maintains that Lutter entered the train compartment without his consent and then searched Claimant's bag, where the money was found, without his consent. According to Claimant, at the time of its seizure, Lutter had no reasonable basis to believe that the money had been acquired in anything other than a legal manner. The government contends, however, that Lutter's contact with Claimant was a consensual encounter. The government maintains that Claimant allowed Lutter to enter the train compartment and impliedly gave Lutter consent to search his bag.

Following the hearing on this matter, the undersigned carefully reviewed, in its entirety, a video and audio recording of the encounter between Lutter and Claimant. The undersigned finds that the video (Exhibit 2) is the best evidence of the events which occurred in this case. The recording, which was captured with Lutter's body camera, revealed the following:[1]

1. Claimant opened the door to the train compartment and spoke to Lutter about his travel plans. (2:18.)

2. Lutter reached into the train compartment to retrieve a water lid or water bottle that had fallen on the floor. (Contrary to Claimant's position at the hearing, this is the only time prior to consent being obtained that Lutter reached into or entered the compartment.) (3:00.)

3. Lutter asked Claimant if he was traveling with any large sums of money *connected* with criminal activity. Claimant denied the presence of any such money. (4:52.)

4. Lutter also asked Claimant if he possessed any large sums of U.S. Currency—$10,000 or more. Claimant denied the presence of any such money. (Notably, on this occasion, Lutter's question did not tie the large sums of currency with criminal activity, as he did during the previous exchange. This contradicts Claimant's testimony as to why he denied having currency.) (6:30.)

5. Lutter asked Claimant if he could conduct a quick search of the room and bag. In response, Claimant asked, "Search?" "Bag?" Claimant then began opening certain sections of his bag and began going through them. (6:46.)

6. Lutter asked Claimant if it would be alright if Lutter conducted the search of the bag, assuring Claimant that he would not lose any of his things. Claimant responded, "I guess so if you have to, yeah sure." (7:05.) Lutter then began searching the bag. (7:10.)

7. Lutter told Claimant to stand up and Claimant was removed from the train compartment based upon Lutter's discovery of the three bundles located in the two zipper bags which Lutter believed to be consistent with currency bundles. (7:40.)

8. From the time of the initial encounter between Claimant and Lutter

[1]. The time in which each event took place during the running of the video is noted by minute and second at the end of each numbered paragraph.

and the time Claimant gave Lutter consent to search the bag, no more than eight minutes elapsed.

Having heard the testimony and reviewed the evidence, the Court finds that the initial encounter between Claimant and Lutter began with a legitimate law enforcement tactic—a "knock and talk." Although this tactic can become illegal if police assert their authority, refuse to leave or otherwise make individuals feel like the cannot refuse to open their door, no such evidence is presented here. *See United States v. Spotted Elk,* 548 F.3d 641, 655 (8th Cir.2008). At the time of his contact with Claimant, Lutter was dressed in plain clothes and his weapon was not exposed. Based upon the review of the video, it is apparent that there was no show of authority that would make Claimant feel as if he could not terminate the encounter. Claimant testified that he believed he had no choice but to submit to Lutter's request and that he submitted out of fear based, in part, upon the fact that he is Jewish. However, Claimant's testimony is less than credible and self-serving. There were several instances in which Claimant's hearing testimony conflicted with what was captured on the video. For instance, Claimant asserted that he told Lutter that he preferred not to be searched, yet this statement is not revealed in the recording. In short, there is no evidence that Claimant was afraid, under any pressure or otherwise in distress prior to Lutter's search.

The Court further concludes that Claimant did, in fact, give Lutter verbal consent to search the bag. Claimant's consent is captured on the recording provided to the Court. Additionally, even in the absence of verbal consent, it is clear from Claimant's behavior in voluntarily opening the bag and showing Lutter a portion of its contents that he consented to the search. Lutter did testify at the hearing that he did not obtain verbal consent to search. While Lutter's testimony is contradicted by the recording, the undersigned finds that Lutter is nonetheless credible. Claimant's verbal consent was difficult to hear on the audio recording and it is quite possible that Lutter did not hear Claimant or simply does not remember obtaining verbal consent. In any event, the recording shows Claimant voluntarily opening his bag and going through its contents which supports Lutter's testimony that he believed consent was given or implied by Claimant's actions.

Although not directly raised in his motion, Claimant apparently maintains that Lutter did not know that the bundles were contraband because Lutter did not open the bundles until they arrived at the police station. However, Lutter testified that based upon his experience and training, the bundles were consistent with bundles of currency, and noted that in his experience, he had never seen anything but money packaged in that manner. Additionally, as revealed in the video, Claimant denied having *any* large amounts of currency with him, including currency *not* connected to illegal activity.

Accordingly,

**IT IS HEREBY RECOMMENDED** to Chief United States District Court Judge Laurie Smith Camp that Claimant's motion (filing 10) be denied in its entirety.

The parties may file an objection to the undersigned's Findings and Recommendation within fourteen (14) days of the filing of the un-redacted transcript from the hearing on this matter. Failure to timely object may constitute a waiver of any objection.

Filed July 24, 2015.