**United States Court of Appeals**
FOR THE EIGHTH CIRCUIT

_____

No. 96-3617
_____

United States of America,          *
                                    *
        Plaintiff-Appellee,         *
                                    *
    v.                              *
                                    *
Thomas Hayes,                       *
                                    *
        Defendant-                  *
Appellant.                          *


    _____                       Appeals  from  the  United
States
                                      District Court for the
    No.  96-3715                      District of Nebraska.
    _____

United States of America,          *
                                    *
        Plaintiff-Appellee,         *
                                    *
    v.                                      *
                                    *
Georgianna Top Bear,               *
                                    *
        Defendant-Appellant.  *


                    _____


            Submitted:  March 11, 1997
                        Filed:  July 15, 1997
                    _____

Before McMILLIAN and HANSEN, Circuit Judges, and MAGNUSON,[1] District Judge.

_____

HANSEN, Circuit Judge.

Thomas Hayes and Georgianna Top Bear appeal their criminal convictions of armed bank robbery and conspiracy to commit bank robbery. Hayes and Top Bear both contend that the district court[2] erred by denying their motions to reveal the identity of a government witness. Additionally, Top Bear argues that the district court erred by denying her motion to suppress evidence and that the evidence was insufficient to support her convictions. We affirm.

## I. Background

An indictment charged Hayes and Top Bear with armed robbery, in violation of 18 U.S.C. § 2113(a), (d) (1994), and conspiracy to commit bank robbery, in violation of 18 U.S.C. § 371 (1994). Viewing the evidence at trial in the light most favorable to the verdict, see United States v. Johnson, 114 F.3d 808, 812 (8th Cir. 1997), the jury could have found the following facts. On October 20, 1995, the Farmers and Merchants State Bank in Niobrara, Nebraska, was robbed by an individual wearing a brown trench coat, a dark ski mask that completely covered the face, faded blue jeans, and white tennis shoes. Two tellers, a bank vice president, and two customers were present during the robbery, and all described the robber

_____

[1]The HONORABLE PAUL A. MAGNUSON, Chief Judge, United States District Court for the District of Minnesota, sitting by designation.

[2]The Honorable William G. Cambridge, Chief Judge, United States District Court for the District of Nebraska.

as a woman.  At one point, the robber held a black handgun to the head of the bank vice president.  The robber brought

two garbage bags into the bank and dropped one at the scene. In total, $4,680 was taken.

One customer, Jimmy Dean Robinette, heard the robber's voice, believed it was familiar, and described the robber as having a Native American dialect.  When the robber fled in a maroon mini van, Robinette pursued the robber and followed the mini van out of town.  At the edge of town, the van turned south and a Ford Tempo pulled in front of Robinette, also apparently following the mini van.  Robinette recognized the driver of the Tempo as Thomas Hayes, a patron of the bar that Robinette owned.  At that moment, Robinette realized that the voice he recognized during the bank robbery was that of Hayes' wife, Georgianna Top Bear, who also was a patron of Robinette's bar.  Robinette was unable to keep up with the mini van and returned to town to report the names of the persons he believed were involved in the robbery.

Chief Deputy Don Henery heard a radio broadcast advising that the bank had  been robbed and that the robber was driving a maroon mini van south of town.  He also heard the report that Thomas Hayes and Georgianna Top Bear were suspects.  Henery knew Hayes and Top Bear were married, and he knew where they lived on rural tribal trust land.  Henery drove to their residence and observed Hayes drive up in a Ford Tempo.  When Hayes saw the deputy, he immediately drove away.  Henery followed Hayes, who led Henery on a high-speed chase.  After driving the Tempo off a four- to six-foot embankment, Hayes finally stopped his car.  Hayes had his 2 ½-year-old daughter in the car with him.  Hayes told Henery that he fled because he had a can of beer in the car, in violation of the terms of his probation for a prior felony conviction. Hayes consented to a search of his car.  The search produced two stocking masks, gloves, and an empty BB gun box bearing a picture of a replica .45 caliber pistol.  Officers found a Wal-Mart receipt

-4-

for a makeup kit, another Wal-Mart receipt for an air pistol, and yet another Wal-Mart receipt for a three-hole mask and gloves -- all purchased on the morning of the robbery. Also, officers found a pawn ticket, documenting the pawn of Hayes' trailer home and several movies for $72 at a pawn

shop located a few minutes away from the only Wal-Mart store in Yankton, South Dakota. According to the pawn shop owner, Hayes had pawned these items early on the morning of the robbery.

The same day, law enforcement officers secured a search warrant for the home of Hayes and Top Bear. During the search, officers seized a box of garbage bags and a loose bag found on the floor. At approximately 11:00 p.m., Top Bear arrived at the residence with a friend, Paula Larson. While an agent was explaining the procedure, that is, that he would be asking her to explain her whereabouts during the day, Top Bear offered that she had been in Yankton, South Dakota, during the day. She was eventually taken to the county jail, where she provided officers with two handwritten confessions, both of which were suppressed by the district court, because she had requested counsel and a government agent had initiated the subsequent contact which led to the confessions.

Paula Larson testified that Top Bear arrived at her home on foot at approximately 9:30 p.m. Top Bear told her that she had been driving her mother's car, experienced car trouble near Lynch, Nebraska, and had walked from there to Larson's home (approximately 30 miles). Top Bear's clothing was wet and dirty. Larson gave her some dry clothing and offered to drive Top Bear home. Larson gathered up Top Bear's dirty clothing and put them in grocery bags. When they approached Top Bear's home, they saw lights and police cars at the premises. Top Bear told Larson, "Just keep going." (Trial Tr. at 401.) Larson drove past the residence, but they decided to return. Top Bear said, "I might as well go back and face it." (Id.) Top Bear left the clothing in Larson's car. Larson asked Top Bear if she wanted the clothing, and Top Bear said she did not. Larson permitted the officers to search her vehicle. Law enforcement officers seized the clothing from Larson's car, and

the district court denied Top Bear's motion to suppress this evidence.

At trial, Top Bear's mother, Mrs. Red Blanket, testified that Top Bear had not borrowed her car on October 20, 1995, contrary to what Top Bear had told Larson. Mrs. Red Blanket had not owned a car since March of that year. She further testified that Top Bear had called her after being arrested and requested her to provide a false alibi. Top Bear asked her mother to tell the police that they had been together at Winner, South Dakota, on the day of the robbery. In fact, Mrs. Red Blanket had not been with Top Bear at all on that day.

The money from the robbery was not found until April 5, 1996. A heavy equipment operator found the money in a red and white cooler, lying in a roadside ditch south of Niobrara where he was grading the road. He had spotted the cooler when he was grading the road in early November as well but had not stopped to pick it up at that time. The cooler also contained a can of peanuts and some other small items. A fingerprint expert examined the can of nuts and determined that fingerprints on it matched those of Georgianna Top Bear.

On the evening before the robbery, Ted Harris's maroon mini van was stolen from the parking lot of a bar in Lindy, Nebraska, which is approximately 15 miles from Niobrara. Harris immediately reported the van stolen and said that at the time of its theft, a pair of leather gloves and an empty red and white square cooler were inside the van. The mini van was found the day after the robbery in a building on an abandoned farm lot, approximately four or five miles south of Niobrara. Hair samples were taken from the van, but none matched the known hair samples of Top Bear or Hayes.

The United States provided the defendants with investigative reports concerning this case. Included was an FBI report containing a witness's statement that three men had contacted him about participating in a future bank robbery in

-8-

Niobrara. The three men allegedly involved were named in the report, but the witness was not identified. Two days after the trial of this case had commenced, Hayes and Top Bear filed a motion to reveal the identity of the witness. The district court denied the motion,

holding that it was not timely and that the defendants had made an insufficient showing that the evidence would be exculpatory.

The jury convicted both defendants on both offenses. The district court sentenced Top Bear to a term of imprisonment of 88 months on the armed robbery count and a concurrent 60-month term of imprisonment on the conspiracy count. Hayes was sentenced to a term of 121 months of imprisonment on the armed robbery count and a concurrent 60-month term on the conspiracy count. Both defendants appeal.

## II.  Discussion

Hayes and Top Bear argue that the district court erred in denying their motion to require the government to reveal the identity of an informant. The informant had reported to the FBI that three named individuals had discussed with him the idea of robbing the Niobrara bank. The defendants contend that the government's refusal to disclose the identity of the informant violated their due process rights as articulated in Brady v. Maryland, 373 U.S. 83 (1963). The district court denied the motion to compel disclosure, first noting  that the motion was untimely. The information that this witness had identified three possible suspects and given their names was provided to the defendants in November 1995, and the defendants did not move for disclosure of the witness's identity until June 19, 1996 -- the second day of trial. Second, the district court concluded that there was not a sufficient showing that the government had withheld any material exculpatory evidence.

The government must disclose to the defense all evidence that is "favorable to an accused" and "material either to guilt or to punishment," Brady, 373 U.S. at 87, including both

-10-

exculpatory and impeachment evidence, regardless of whether the defendant requests the information,  United States v. Bagley, 473 U.S. 667, 682 (1985).  Kyles v. Whitley, 514 U.S. 419, 432-34 (1995); United States v. Gonzales, 90 F.3d 1363, 1368 (8th Cir. 1996).  For evidence to be considered material, there must be "a

reasonable probability" that its disclosure would have altered the result of the proceeding. Bagley, 473 U.S. at 682; United States v. Harrington, 951 F.2d 876, 878 (8th Cir. 1991). "[D]isclosure may be required where a defendant shows that it would be relevant and helpful to the defense or essential to a fair trial." United States v. Bourbon, 819 F.2d 856, 859 (8th Cir. 1987) (citing Rovario v. United States, 353 U.S. 53 (1957)). Generally, it is not material to the outcome of a case to disclose the identity of informants "who merely convey information to the government but neither witness nor participate in the offense." Harrington, 951 F.2d at 878; see Bourbon, 819 F.2d at 860.

We conclude that the district court did not err in denying the defendants' motion to disclose the identity of the informant in this instance. In November 1995, the government timely produced the report of the FBI's interview with an unidentified informant who provided the names of three possible suspects for the robbery, none of whom were Hayes or Top Bear. Pretrial motions were scheduled to be filed by the end of December 1995. While the defendants timely filed some pretrial motions, they did not seek to compel the government to disclose the identity of the confidential informant until two days after the start of their trial in June 1996. The defendants offered no good cause for waiting six months to request this alleged Brady material. We agree with the district court's conclusion that the motion was untimely. Furthermore, the identity of this particular informant, who neither witnessed nor participated in the robbery at issue in this case, is not the type of evidence that the government is compelled to produce. The defendants made no showing that disclosure of this informant's identity was material to the outcome of their case. They were provided with the names, addresses, dates of birth, social security numbers, and criminal histories of each suspect identified by the informant. They offered no explanation

-12-

concerning why the information provided was insufficient or what more they expected to learn from the informant.  There simply was no showing to indicate a reasonable probability that disclosure of this informant's identity would have changed the outcome of the trial.  Thus, we conclude

that the district court did not err in denying the defendants' motion to compel disclosure of this informant's identity.

Georgianna Top Bear challenges the district court's partial denial of her motion to suppress evidence and statements allegedly obtained in violation of the Fourth and Fifth Amendments. Adopting the report and recommendation of the magistrate judge, the district court denied Top Bear's motion to suppress the clothing seized from Paula Larson's car, concluding that she had abandoned them and therefore lacked standing to challenge the seizure. Top Bear argues that she did not abandon her clothing but retained a privacy interest in them.

"The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.'" California v. Ciraolo, 476 U.S. 207, 211 (1986) (quoting Katz v. United States, 389 U.S. 347, 360 (1967) (Harlan, J., concurring)). To prevail on her motion to suppress the clothing, Top Bear had the burden to demonstrate (1) that she had a subjective expectation of privacy -- a question of fact which we review under a clearly erroneous standard; and (2) that her subjective privacy expectation was objectively reasonable -- a question of law, which we review de novo. Ciraolo, 476 U.S. at 211; United States v. Stallings, 28 F.3d 58, 60 (8th Cir. 1994); United States v. Kiser, 948 F.2d 418, 423 (8th Cir. 1991), cert. denied, 503 U.S. 983 (1992). We are persuaded that the district court did not clearly err in determining that Top Bear abandoned her expectation of privacy in the bag of clothing. She wore the clothing to Larson's residence and there discarded them, leaving them lying about. Larson picked them up and placed them in the bag, but Top Bear was not interested in taking the bag with her when she left Larson's vehicle. Thus, Top Bear offered no facts to indicate that she retained any expectation

-14-

of privacy in the item seized, and absent a legitimate expectation of privacy, Top Bear had no standing to challenge the seizure of the clothing. Stallings, 28 F.3d at 60 (holding defendant must have legitimate expectation of privacy in the place searched or the item seized to have standing to challenge the search or seizure under the Fourth

Amendment). Likewise, Top Bear lacked standing to challenge the search of Larson's car. See United States v. Muhammed, 58 F.3d 353, 355 (8th Cir. 1995).

The district court also denied Top Bear's motion to suppress her statement that she had been in Yankton, South Dakota, on the day of the robbery. We review de novo the denial of a motion to suppress. United States v. Weinbender, 109 F.3d 1327, 1329 (8th Cir. 1997). "However, 'a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.'" Id. (quoting Ornelas v. United States, 116 S. Ct. 1657, 1663 (1996)). The district court found that Top Bear volunteered her statement that she had been in Yankton that day. The district court found that she made this statement while FBI Special Agent Birnie was explaining the procedure to her and before he had advised her of her rights under Miranda v. Arizona, 384 U.S. 436 (1966). Thus, the court concluded that the statement was not obtained in violation of Miranda. The district court's findings are not clearly erroneous. Special Agent Birnie had not yet asked Top Bear to explain her whereabouts during the day. He explained that he wanted to ask her some questions concerning the events of the day and asked her to step inside so he could advise her of her rights before questioning her. When Top Bear then announced that she had been in Yankton, prior to any actual questioning, Special Agent Birnie immediately stopped her and advised her of her rights. (See Motion to Suppress Tr., Jan. 24, 1996, at 28-29.) "Miranda does not protect an accused from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers." United States v. Hawkins, 102 F.3d 973, 975 (8th Cir. 1996) (internal quotations and citations omitted), cert. denied, 117 S. Ct. 1456 (1997). We conclude

-16-

that Top Bear's statement about having been in Yankton that day was not obtained in violation of <u>Miranda</u>, and the district court did not err by denying her motion to suppress the statement.

Finally, Top Bear contends that the evidence was insufficient to support the jury verdicts finding her guilty on both counts. We disagree. "To decide whether the evidence is sufficient to support a verdict, the court views the evidence in a light most favorable to the verdict and accepts all reasonable inferences favorable to the [verdict] that logically can be drawn from the evidence." Johnson, 114 F.3d at 812. We reverse a verdict for lack of sufficient evidence "only when a reasonable fact finder could not have found the defendant guilty beyond a reasonable doubt." Id. We recited the facts in the light most favorable to the verdict above. Top Bear points out minor discrepancies in the eye witness accounts and attacks the credibility of Robinette's testimony. Even where a defendant presents ample evidence from which a jury could have found her not guilty, however, "the law is well established that it is the jury's function to evaluate the credibility of witnesses." Id. Our review of the record convinces us that the evidence is sufficient to support the jury verdicts in this case.

### III. Conclusion

For the reasons stated above, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.