# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-3807

_____

United States of America

*Plaintiff - Appellee*

v.

Giovani Crisolis-Gonzalez

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: November 21, 2013
Filed: February 10, 2014

_____

Before BENTON, BEAM, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Giovani Crisolis-Gonzalez was convicted of possession with intent to distribute and conspiracy to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841 and 846, and illegal reentry of an alien in violation of 8

U.S.C. § 1326(a). Crisolis-Gonzalez appeals the district court's[1] denial of his motion to suppress evidence obtained and statements elicited while the agents conducted a "knock and talk"[2] at Crisolis-Gonzalez's residence. We affirm.

I.

During his investigation of a series of drug trafficking cases in St. Joseph, Missouri, Special Agent Jose Covarrubias of Homeland Security Investigations received information from a confidential informant that Crisolis-Gonzalez had entered the country illegally, was involved in trafficking methamphetamine, and had possibly purchased a firearm. As a result of receiving this information, two special agents were assigned to conduct surveillance of the apartment complex where Crisolis-Gonzalez was believed to be staying. At the complex, the agents located a vehicle they believed belonged to Crisolis-Gonzalez and informed Agent Covarrubias. Agent Covarrubias and another special agent joined the other two at the complex in order to conduct a "knock and talk," intending to obtain further information about Crisolis-Gonzalez.

Agent Covarrubias approached the apartment believed to house Crisolis-Gonzalez and knocked on the door. Mr. Reyes-Savedra, boyfriend and roommate of one of the lessees, opened the door, and Agent Covarrubias asked, in Spanish, if he could come in to speak with him. Reyes-Savedra agreed and stepped aside to let the agents in. Upon entering the apartment, the agents noticed a baby and a woman, later

---

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri, adopting the report and recommendations of the Honorable Sarah W. Hays, United States Magistrate Judge for the Western District of Missouri.

[2]A "knock and talk" is an investigatory technique in which law enforcement officers approach the door of a dwelling seeking voluntary conversation and consent to search. See United States v. Wise, 588 F.3d 531, 534 n.3 (8th Cir. 2009).

identified as Crisolis-Gonzalez's girlfriend, Yuliet Lara-Andres, in the kitchen. Agent Covarrubias then asked if anyone else was in the home. Neither Reyes-Savedra nor Lara-Andres answered. After being asked again, Reyes-Savedra paused and turned his head slightly towards the hallway.

Interpreting Reyes-Savedra's hesitance and slight head turn as indicating that other people were in the house, the agents drew their guns and informed Reyes-Savedra and Lara-Andres that they were going to check the apartment for other people. While walking down the hall, the agents yelled "police, police" in Spanish. Crisolis-Gonzalez came out of a bedroom with his hands up. Crisolis-Gonzalez was handcuffed and taken to the living room. Agents also found another individual, later identified as Mr. Ocampo-Ocampo, whom they also handcuffed.

Agent Covarrubias questioned everyone as to their names and immigration status. Crisolis-Gonzalez admitted he was in the country illegally. Agent Covarrubias then requested consent to search the apartment. Crisolis-Gonzalez asked what they were looking for, and Agent Covarrubias told him they were looking for any fraudulent documents, guns, large amounts of cash, and drugs. Crisolis-Gonzalez then stated that he had a gun under his mattress. Two of the agents went to the bedroom to make sure the gun was not loaded but did not seize the gun at that time. Agent Covarrubias again requested consent to search. Crisolis-Gonzalez asked what would happen if he refused, and Agent Covarrubias responded that he would attempt to get a search warrant. Agent Covarrubias handed each resident a consent-to-search form written in Spanish and read it to them. Crisolis-Gonzalez read the form and signed. Lara-Andres also signed the form. Ocampo-Ocampo and Reyes-Savedra declined to consent at that time.

The agents then searched Crisolis-Gonzalez's bedroom and discovered drugs, drug paraphernalia, cash, and an illegitimate social security card in the closet. Agent Covarrubias obtained a Miranda-warnings form and read the form to Crisolis-

Gonzalez. Crisolis-Gonzalez signed the form and agreed to speak with Agent Covarrubias. Crisolis-Gonzalez was taken to the Platte County Jail where he signed the Miranda-warnings form again after being advised of his Miranda rights a second time. Agent Covarrubias then began questioning Crisolis-Gonzalez about the discovered drugs and contraband.

The grand jury returned a three count superceding indictment against Crisolis-Gonzalez, after which Crisolis-Gonzalez moved to suppress all evidence and statements obtained during the search of his apartment and subsequent interrogation. A magistrate judge recommended granting the motion in regard to Crisolis-Gonzalez's statement that he was an illegal alien and denying the motion on all other bases. The district court adopted the report and made the following findings: (1) the agents were given consent to enter the apartment because Agent Covarrubias's request to come in and talk with Reyes-Sevadra cannot be construed as an attempt to misrepresent the purpose of the agents' presence; (2) the protective sweep of the apartment was valid because the agents had a reasonable belief that the area harbored an individual posing danger; (3) although the pre-Miranda statement regarding Crisolis-Gonzalez's immigration status should be suppressed, the statement that he possessed a gun is admissible because the statement was made in response to a request for consent to search, which did not amount to an interrogation; (4) Crisolis-Gonzalez's consent to search the apartment was voluntary, particularly because Crisolis-Gonzalez asked what would happen if he refused, exhibiting his consideration of the available options; and (5) the statements following the Miranda warning and Crisolis-Gonzalez's waiver were not fruit of the poisonous tree because there were no prior violations, and Crisolis-Gonzalez understood his rights.

The case proceeded to a bench trial, where Crisolis-Gonzalez was convicted on all counts except the charge of possession of a firearm in connection with a drug offense. He was fined $400 in special assessments and sentenced to a controlling term of 135 months with five years of supervised release.

## II.

Crisolis-Gonzalez appeals his conviction, arguing the district court erred in denying his motion to suppress. Crisolis-Gonzalez specifically contends that the agents (A) entered his apartment unlawfully; (B) conducted a protective sweep without specific, articulable facts indicating the apartment harbored dangerous individuals; (C) illegally elicited the statement about his hidden gun under the mattress; (D) unlawfully obtained consent to search the apartment; and (E) unlawfully obtained incriminating statements pursuant to an involuntary Miranda waiver. "The denial of a motion to suppress is reviewed de novo with its underlying factual determinations reviewed for clear error." United States v. Torres-Lona, 491 F.3d 750, 755 (8th Cir. 2007).

### A. "Knock and Talk" Entry

Crisolis-Gonzalez argues that the agents gained entry into the home by false pretense. Particularly, he maintains that Agent Covarrubias's request to come in to speak with Reyes-Savedra was misleading because the agents really wanted to speak to Crisolis-Gonzalez. He also contends Reyes-Savedra did not have authority to consent to the agents' entry.

Indeed, "'[m]isrepresentations about the nature of an investigation may be evidence of coercion'" and can certainly "invalidate the consent if the consent was given in reliance on the officer's deceit." United States v. Briley, 726 F.2d 1301, 1304 (8th Cir. 1984) (quoting United States v. Turpin, 707 F.2d 332, 334 (8th Cir. 1983); see also United States v. Kelly, 329 F.3d 624, 629 (8th Cir. 2003) (citing Briley, 726 F.2d at 1304). However, we do not require officers to "'gratuitously advertis[e] [their] every move to anyone [they] might encounter.'" Briley, 726 F.2d at 1305 (second and third alterations in original) (quoting In re Anthony F., 442 A.2d 975, 980 (Md. 1982)).

We find no evidence of misrepresentation in Agent Covarrubias's request to enter the apartment. Importantly, Reyes-Savedra agreed to let the agents inside without further inquiry as to the nature of the visit. See Turpin, 707 F.2d at 335. And, like the district court, we find nothing misleading about Agent Covarrubias's request to speak with Reyes-Savedra because it was consistent with the overall goal of locating Crisolis-Gonzalez. See e.g., Briley, 726 F.2d at 1305 (concluding that the officers' statement that they wanted to discuss important matters with the defendant was not a misrepresentation of the officers' purpose of arresting the defendant).

Whether Reyes-Savedra had common authority over the premises such that he could consent to the agents' entry is "a question of fact and is determined by the existence of 'mutual use, joint access, and control.'" United States v. Almeida-Perez, 549 F.3d 1162, 1170 (8th Cir. 2008) (quoting United States v. James, 353 F.3d 606, 613 (8th Cir. 2003)). Consent to enter or search the premises "may be given by a 'third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.'" United States v. Hilliard, 490 F.3d 635, 639 (8th Cir. 2007) (quoting United States v. Matlock, 415 U.S. 164, 171 (1974)). It is undisputed that Reyes-Savedra shared a bedroom in the apartment with his girlfriend, whose name was on the lease. Thus, Reyes-Savedra had actual authority to consent.

## B. The Protective Sweep

Next, Crisolis-Gonzalez argues that the agents performed an unlawful warrantless search of the apartment under the guise of a protective sweep. A protective sweep is permitted under the Fourth Amendment when an officer has "'articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.'" United States v. Cisneros-Gutierrez, 598 F.3d 997, 1006 (8th Cir. 2010) (quoting Maryland v. Buie,

494 U.S. 325, 334 (1990) (internal quotation marks omitted)). Crisolis-Gonzalez claims that the protective sweep was unlawful due to the absence of an initial arrest and the lack of any articulable facts suggesting the agents were in danger. We disagree.

Protective sweeps need not always occur in conjunction with an arrest. See id. In Cisneros-Gutierrez, we upheld the sweep in the absence of an arrest because under the circumstances, a "reasonable officer could conclude that it was necessary for his safety to secure the premises before obtaining a warrant." Id. at 1006. In that case, the officers had been informed that the defendants possessed illegal narcotics and firearms, and when the officers arrived on the premises, they observed the defendants' evasive and suspicious behavior. Id. at 1007. In light of those facts, we concluded that "[t]here was a reasonable possibility that other individuals were in the home, posing a danger to the officers." Id. at 1006-07.

We draw a similar conclusion here. The agents had been informed that Crisolis-Gonzalez was involved in drugs and that he may have purchased a gun. The hesitance from both Reyes-Savedra and Lara-Andres when Agent Covarrubias asked if others were in the house ignited the agents' suspicion as to the potential danger. Reyes-Savedra's slight head turn to the hallway in response to being asked whether anyone else was in the apartment created further suspicion that other individuals were present. We hold these facts sufficient to alert the agents as to the possibility that the apartment harbored dangerous individuals. Thus, the agents conducted a lawful protective sweep of the apartment.

## C. Pre-Miranda Gun Statement

Crisolis-Gonzalez also maintains that his statement regarding the gun under his mattress was unlawfully elicited. He makes two arguments. First, he contends that Agent Covarrubias should have known that inquiry into his immigration status

without a proper <u>Miranda</u> warning would likely elicit incriminating statements. Second, Crisolis-Gonzalez maintains that his question as to what the agents would be looking for if he gave his consent and Agent Covarrubias's subsequent response that they would look for fraudulent documents, guns, large amounts of cash, and drugs amounted to an unlawful elicitation of his gun statement.

"Interrogation in the <u>Miranda</u> context refers to express questioning and to words or conduct that officers should know is 'reasonably likely to elicit an incriminating response from the suspect.'" <u>United States v. Briones</u>, 390 F.3d 610, 612 (8th Cir. 2004) (quoting <u>Rhode Island v. Innis</u>, 446 U.S. 291, 301 (1980)). We do not find that the inquiry into Crisolis-Gonzalez's immigration status motivated his incriminating statement about the gun. Such questioning was wholly unrelated to Crisolis-Gonzalez's volunteered statement that he had a gun under his mattress. Moreover, the circumstances make it clear that Crisolis-Gonzalez's gun statement was not made in response to the question as to his immigration status but was made in response to Agent Covarrubias's explanation of what the agents would be looking for if permitted to search the apartment. Therefore, the gun statement was independent from Agent Covarrubias's immigration inquiry. <u>See</u> <u>United States v. Hawkins</u>, 102 F.3d 973, 975 (8th Cir. 1996) (rejecting the defendant's argument that his incriminating statement was induced by the officer's earlier "inherently coercive interrogation" when it was clear from the circumstances that "it was the discovery of illegal drugs in his home, not police coercion, that induced the statements").

We also conclude that Agent Covarrubias's response to Crisolis-Gonzalez's inquiry as to what the agents would be looking for if permitted to search is not the type of statement that would induce an incriminating admission. "<u>Miranda</u> does not protect an accused from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers." <u>United States v. Hayes</u>, 120 F.3d 739, 744 (8th Cir. 1997) (internal quotation marks omitted) (holding that the defendant's admission as to her

whereabouts on the day of the robbery was volunteered and thus not made in violation of her <u>Miranda</u> rights when the agent merely explained that he wanted to ask questions concerning the events of the day). We have also noted that an officer's response to a defendant's question does not amount to an interrogation. <u>See</u> <u>United States v. Howard</u>, 532 F.3d 755, 762 (8th Cir. 2008) ("The record is unclear whether the police informed Howard why they were in the area because Howard asked, or if they did so on their own. Clearly, the former situation does not amount to the functional equivalent of direct questioning."). In <u>Howard</u>, we also reasoned that even if an officer explains why he is in the area without being asked, an officer cannot be held to have reasonably known such explanation would elicit an incriminating response. <u>Id.</u>

Here, Agent Covarrubias merely requested consent to search. Crisolis-Gonzalez asked Agent Covarrubias to explain what the officers would be looking for. Relying on the logic in <u>Hayes</u> and <u>Howard</u>, Agent Covarrubias's response cannot be construed as an attempt to elicit incriminating statements. Thus, we hold Crisolis-Gonzalez's statement about the gun was a volunteered, spontaneous admission.

### D. Consent to Search

In addition, Crisolis-Gonzalez claims that his consent to search his bedroom was involuntary because the agents created a coercive atmosphere, one where all the occupants were initially handcuffed without the freedom to leave. "The voluntariness of a consent to search is a factual question that is reviewed for clear error." <u>United States v. Johnson</u>, 619 F.3d 910, 918 (8th Cir. 2010) (internal quotation marks omitted). In determining "whether consent was given voluntarily, we examine the totality of the circumstances." <u>Id.</u>

We find the circumstances surrounding Crisolis-Gonzalez's consent completely void of even the slightest evidence of coercion. The record reveals that Crisolis-

-9-

Gonzalez asked what would happen if he declined to consent and read the consent form himself before he signed it. Such actions exhibit Crisolis-Gonzalez's intelligent consideration of his options. Furthermore, at the time the agents requested consent, the agents had already removed the handcuffs from the occupants and holstered their guns. There is no evidence that the agents acted in a threatening manner.

Moreover, Crisolis-Gonzalez's argument that the agents created a coercive environment is blunted by the fact that two other occupants similarly detained explicitly declined to consent. Viewing the totality of the circumstances, we hold that Crisolis-Gonzalez voluntarily consented to the search of his bedroom.

E. Post-<u>Miranda</u> Statements

As a final argument, Crisolis-Gonzalez contends that due to all of the illegalities that occurred during the "knock and talk" at his apartment, the incriminating statements made during Agent Covarrubias's interrogation constitute "fruit of the poisonous tree." <u>See</u> <u>Wong Sun v. United States</u>, 371 U.S. 471, 488 (1963). Specifically, he argues that the illegalities prevented his <u>Miranda</u> waiver from being knowing and intelligent, and all subsequent statements should be suppressed.

"An individual's waiver of the Fifth Amendment privilege against self-incrimination . . . is valid if made voluntarily, knowingly and intelligently." <u>United States v. Harper</u>, 466 F.3d 634, 643 (8th Cir. 2006). Again, we look to the totality of the circumstances "[w]hen determining the voluntariness of a confession." <u>United States v. Hyles</u>, 479 F.3d 958, 966 (8th Cir. 2007).

Crisolis-Gonalez's argument falls short. First, as discussed, there were no unlawful actions by the agents during their investigation. Accordingly, there is no illegality from which subsequent statements could stem as "fruit of the poisonous

-10-

tree." Moreover, Crisolis-Gonzalez was advised of his <u>Miranda</u> rights twice, once at the apartment and again at the county jail. He read the <u>Miranda</u>-warnings form twice, signing the form once at his apartment and again at the county jail. We find nothing in the record, nor does Crisolis-Gonzalez point to any facts, demonstrating the invalidity of his waiver. Thus, his post-<u>Miranda</u> statements were lawfully obtained.

## III.

The district court's denial of the motion to suppress is affirmed.

_____